Submitted June 30, affirmed November 4, 2015, petition for review denied March 3, 2016 (358 Or 794)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MARTIN ROMERO,
*Defendant-Appellant.*

Klamath County Circuit Court
9802643CR; A154893

360 P3d 1275

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carolyn Alexander, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals an order denying his motion for DNA testing under ORS 138.692.[1] He contends that the trial court erred in denying his motion for DNA testing for failure to present a *prima facie* case of actual innocence. We hold that, because defendant's allegations were insufficient to make a *prima facie* showing of actual innocence, the trial court did not err in denying his motion for DNA testing. We therefore affirm.

In 1999, defendant was convicted of multiple sex crimes committed against the victim—his daughter—over a span of about 12 years. Three years after his conviction, defendant filed a motion for DNA testing and attached an affidavit in support of his motion. In the affidavit, defendant averred that he was "actually innocent" of the crimes for which he was convicted. He identified two specific sex toys to be tested and claimed that the items had not previously been tested for DNA evidence. Defendant's affidavit advanced his theory that DNA evidence could identify other perpetrators of the crime:

"[M]y theory of defense is that there will be no DNA belonging to the alleged victim on these specifically identified items of evidence which will discredit and impeach the alleged victim's statements and testimony. Such impeachment * * * in all likelihood will place 'reasonable doubt' in the minds of any 'triers of facts' in a retrial of this case."

As to the identity of the true perpetrator, defendant stated:

"To date I have not [had] an opportunity to identify other possible perpetrator(s) due to [i]dentification of a perpetrator may boil down to any number of persons, combinations thereof, or Oregon Evidence Code 412 and 801-803,

---

[1] Defendant filed his motion for DNA testing pursuant to the temporary provision that was in effect in 2002. *See* Or Laws 2001, ch 697, § 2, *compiled as a note before* ORS 138.005 (2001) (effective January 1, 2002). That temporary provision was amended in 2005 and 2007, before being codified in the Oregon Revised Statutes in 2007. Or Laws 2005, ch 759, § 2; Or Laws 2007, ch 800, § 2; ORS 138.692 (2007). Once codified, the statute was amended again in 2015, the amendments of which will not become effective until January 1, 2016. Or Laws 2015, ch 564, § 2. In this case, the text of the original 2001 temporary provision governs, but we refer to it as ORS 138.692—the current codification—for clarity, given that the subsequent changes to the statute do not affect our analysis in this case.

however, I will attempt to overcome those barriers of those OEC's in the prosecution/defense allowed me now pursuant to Senate Bill 667 (S.B. 667). [N]one at all explained as follows: (A) my brother Manuel Martin; (B) Andrew Hartley; (C) [a] male individual caught with the alleged victim when the police found the alleged victim in a shed at her aunt's house, however the police failed to detain, charge or pursue that person; (D) any combination of the aforementioned; (E) none of the aforementioned or myself because the alleged victim made the false accusations."

Before the hearing on the motion, defendant filed a second affidavit, in which he added that the state was in possession of a blue nightgown that the victim claimed she was "forced to wear" when she was abused. According to defendant, the nightgown also was never tested for DNA. He added, "There was another suspect in the case who had a prior conviction for sexual offenses."

The trial court held a hearing on defendant's motion after appointing counsel for defendant. At the hearing, defendant argued that, by identifying another potential perpetrator, he had established that the identity of the perpetrator was at issue at trial. He asserted that the sex toys were "a major part" of the victim's testimony and that the absence of the victim's DNA on the sex toys would support defendant's exoneration by contradicting the victim's testimony. For the first time, defendant additionally argued that an absence of his DNA, or the presence of another person's DNA (his brother's) on the nightgown would exonerate him because the victim had testified that she wore the nightgown each time she was abused and that the nightgown had not been washed. The state opposed the motion on the ground that no DNA test results could establish defendant's innocence due to the protracted nature of the abuse and the fact that the perpetrator's identity was never at issue during trial. The state explained that, because the abuse went on for many years and the victim specifically identified defendant as her abuser, the trial focused on proving whether the abuse occurred as the victim described it, with defendant as the perpetrator. The state acknowledged that the sex toys had been admitted into evidence and stipulated that they would be available for testing. However, at the time of the hearing,

it was unclear to both parties whether the nightgown was actually seized during the police investigation or was ever introduced at trial.

The trial court denied defendant's motion for DNA testing. In a letter to the parties, the court concluded that "[t]he evidence submitted is total[ly] lacking" and that "[t]here has been no showing how DNA testing in his case might exonerate [d]efendant."[2]

A review of the applicable statute is helpful to understanding the parties' arguments on appeal. The operative language of ORS 138.692 provides:

"(1)(a)  When a person files a motion under [ORS 138.690] requesting the performance of DNA (deoxyribonucleic acid) testing on specified evidence, the motion must be supported by an affidavit. The affidavit must:

"(A)(i)  For a person described in [ORS 138.692(1)], contain a statement that the person is innocent of the offense for which the person was convicted or of the conduct underlying any mandatory sentence enhancement; or

"(ii)  For a person described in [ORS 138.692(2)], contain a statement that the person is innocent of the offense for which the person was convicted;

"(B)  Identify the specific evidence to be tested and a theory of defense that the DNA testing would support. The specific evidence must have been secured in connection with the prosecution, including the investigation, that resulted in the conviction of the person; and

"* * * * *

"(b)  The person must present a prima facie showing that:

"(A)  The identity of the perpetrator:

---

[2] The trial court's order denying defendant's motion for DNA was dated January 26, 2004. At that time, a defendant in a criminal case was unable to appeal a post-judgment order regarding DNA testing. *See State v. Hart*, 188 Or App 650, 653, 72 P3d 671, *rev den*, 336 Or 126 (2003); *see also* ORS 138.053(1) (2003) (listing the type of appealable orders). However, in 2013, the Oregon Legislature amended the statutory framework to allow for appellate review of DNA testing orders. Or Laws 2013, ch 152, § 1. The law allowed for retroactive application if a defendant filed an appeal within 90 days of the law's effective date, May 16, 2013. *Id.* §§ 2-3. Defendant in this case timely filed his appeal within that 90-day window.

"(i)   Was at issue in the trial that resulted in the conviction of the person; * * *

"* * * * *

"(B)   DNA testing of the specified evidence would, assuming exculpatory results, establish the actual innocence of the person of:

"(i)   The offense for which the person was convicted; * * *

"* * * * *

"(2)   The court shall order the DNA testing requested in a motion under subsection (1) of this section if the court finds that:

"(a)   The requirements of subsection (1) of this section have been met;

"(b)   Unless the parties stipulate otherwise, the evidence to be tested is in the possession of a city, county, state or the court and has been subject to a chain of custody sufficient to establish that the evidence has not been altered in any material aspect;

"(c)   The motion is made in a timely manner and for the purpose of demonstrating the innocence of the person of the offense or of the conduct and not to delay the execution of the sentence or administration of justice; and

"(d)   There is a reasonable possibility that the testing will produce exculpatory evidence that would establish the innocence of the person of:

"(A)   The offense for which the person was convicted."

On appeal, defendant argues that the trial court should have granted his motion for DNA testing because he did, in fact, make a *prima facie* showing of actual innocence. Defendant claims that, although he did not expressly allege in his affidavit that the identity of the perpetrator was at issue at trial, he did so at the hearing. Additionally, defendant claims that he explained how the DNA evidence, assuming exculpatory results, would undermine the state's theory that he committed the offense by either revealing none of his or the victim's DNA or revealing the DNA of the true perpetrator. He contends that "[t]he plain meaning of the

phrase 'reasonable possibility' [in the statute] ensures that a defendant need not establish actual innocence to obtain DNA testing." Rather, according to defendant, in order to satisfy the requirements for DNA testing, it is sufficient to (1) identify the evidence to be tested, (2) state a theory of defense, and (3) attest to the defendant's innocence of the crime of conviction. If a defendant satisfies those requirements through pleadings, then the court is only required to consider whether the defendant's theory of defense "could" prove his innocence, assuming exculpatory DNA results. According to defendant, the trial court does not have to weigh the strength of other evidence against the defendant in making its determination and, likewise, a defendant does not need to prove how the DNA results would overcome the evidence presented during the defendant's criminal trial. Lastly, defendant also argues that denial of his motion for DNA testing violated his constitutional rights under the Fourteenth Amendment to the United States Constitution. We reject that argument without further discussion.

In response to defendant's arguments, the state concedes that a defendant is not required to offer conclusive proof of actual innocence, but argues that a defendant nevertheless has the burden of establishing a *prima facie* showing of actual innocence by presenting some evidence or providing some context to show how the potential DNA results could support a finding of actual innocence. According to the state, a defendant cannot meet the *prima facie* requirement through mere allegations of innocence. Moreover, even assuming that no DNA or another person's DNA was discovered on the identified items, given the evidence against defendant in this case, such a result would not prove that defendant did not abuse the victim.

We recently explained that, when filing a motion for DNA testing, a defendant must (1) include an affidavit in support of his motion asserting that the person is innocent of the offense and identifying "the specific evidence to be tested and a theory of defense that the DNA testing would support" and (2) make a *prima facie* showing of actual innocence. *State v. Johnson*, 254 Or App 447, 448-49, 295 P3d 677, *rev den*, 353 Or 747 (2013) (internal quotation marks omitted). Among the other necessary conditions is a finding

by the trial court that "[t]here is a reasonable possibility that the testing will produce exculpatory evidence that would establish the innocence of the person." ORS 138.692(2)(d). Thus, the affidavit, *prima facie* showing, and "reasonable possibility" requirements are distinct and call for separate analyses.

Here, there is no dispute as to whether defendant met the affidavit requirement. The issue is whether defendant made the requisite *prima facie* showing, which he claims also to have done in his affidavits. We need not reach the question of whether defendant met the "reasonable possibility" requirement, because we conclude that defendant did not make the requisite *prima facie* showing.

Again, ORS 138.692(1)(b) provides:

"The person must present a prima facie showing that:

"(A)   The identity of the perpetrator:

"(i)   Was at issue in the trial that resulted in the conviction of the person; [and]

"* * * * *

"(B)   DNA testing of the specified evidence would, assuming exculpatory results, establish the actual innocence of the person * * *."

To determine whether defendant met the above requirements, we begin by interpreting the meaning of the provision, beginning with the text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). When interpreting words of common usage, we rely on "their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

The statute requires a "prima facie showing," which has been previously interpreted as a legal term of art "commonly defined as '[a] party's production of enough evidence to allow the fact-trier to infer the fact in issue and rule in the party's favor.'" *Staten v. Steel*, 222 Or App 17, 49, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009) (Edmonds, P.J., concurring) (quoting *Black's Law Dictionary* 1228 (8th ed 2004)). The first fact in issue is whether the identity of the perpetrator was at issue at trial, and the second is whether

DNA testing, assuming exculpatory results, would "establish the actual innocence of the person." ORS 138.692(1)(b). We conclude that defendant failed to produce enough evidence to allow the trier of fact to infer either of those facts.

We first address whether defendant produced enough evidence to allow the trier of fact to infer that the identity of the perpetrator was at issue at trial. Defendant failed to address that fact in either of his affidavits, raising it for the first time during the hearing on his motion. Even then, he did not provide any evidence to support his argument that the perpetrator's identity had been at issue in the underlying trial. At the hearing, the state countered defendant's argument and stated that the identity of the perpetrator was never at issue during the trial. Because the parties presented conflicting allegations regarding that issue, defendant bore the burden of presenting some evidence that would have allowed a trier of fact to infer that the identity of the perpetrator was at issue in the underlying trial. Merely alluding to other potential suspects in the affidavits was not sufficient for the trial court to make the necessary inference.

We next address whether defendant presented a *prima facie* showing that DNA testing of the sex toys and nightgown, assuming exculpatory results, would establish his "actual innocence" of the offenses for which he was convicted. ORS 138.692(1)(b). Contrary to defendant's approach, something more than a defendant's mere assertion of his innocence is required to make the *prima facie* showing required by statute.

There is an implicit understanding that the "criminal justice system simply does not have a mechanism for determining actual innocence." *See Stephens v. Bispham*, 316 Or 221, 257, 851 P2d 556 (1993) (Unis, J., specially concurring) (noting that the "criminal justice system declares persons to be either guilty or not guilty"). Rather, "[e]ven a finding by an appellate court or by a post-conviction court that there is insufficient evidence to convict a person is not a finding [of actual innocence], but is, instead, a finding that the evidence presented by the prosecutor [was] not sufficient to establish guilt beyond a reasonable doubt." *Id.* at 257-58. That suggests that, in assessing whether a defendant has

made a *prima facie* showing that exculpatory DNA evidence would establish "actual innocence," we are called upon to assess whether there is some likelihood that such evidence would give rise to reasonable doubt about the defendant's guilt. That is an assessment that necessarily requires an examination of the proceedings that led to the defendant's conviction, and which cannot be made based on a conclusory assertion of innocence, standing alone.

The statutory context supports that view. To begin, DNA testing under ORS 138.692 is a post-conviction remedy; the defendant has been duly convicted, and the testing request occurs in the context of a presumptively valid conviction—that is, the defendant has once been found guilty beyond a reasonable doubt. To demonstrate actual innocence, the DNA evidence would necessarily have to cause the factfinder to have doubt about the conviction, and an assessment of whether doubt has been created logically requires looking at the trial evidence. Moreover, the possible end result of this procedural statute is a new trial because the new evidence, if exculpatory, might change the result of the previous trial. The gist of the whole inquiry is that the DNA evidence might cause jurors to see things differently and have doubt about the defendant's guilt.

Our approach is similar to the approach adopted by the United States Supreme Court in the analogous context of federal habeas corpus proceedings. In *Schlup v. Delo*, 513 US 298, 115 S Ct 851, 130 L Ed 2d 808 (1995), the Court held that state prisoners seeking habeas corpus review of procedurally defaulted claims of constitutional error in the proceedings leading to conviction can obtain such review by demonstrating procedural "actual innocence." To make a showing of procedural or "gateway" actual innocence, a prisoner must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court later explained that, because such a claim "involves evidence the trial jury did not have before it, the inquiry requires the * * * court to assess how reasonable jurors would react to the overall, newly supplemented record." *House v. Bell*, 547 US 518, 538, 126 S Ct 2064, 165 L Ed 2d 1 (2006). Accordingly, a petitioner's burden in the

analogous context of a *Schlup* gateway claim is to demonstrate that, "in light of the new evidence, \* \* \* more likely than not any reasonable juror would have reasonable doubt" about the defendant's guilt. *Id.* In *House*, for example, the court held that new DNA evidence pointing to a different suspect, in combination with other additional testimony, made it more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt. *Id.* at 554.

Our review occurs at an earlier stage of an analogous process; at the point of a request for DNA testing, a defendant need only make a *prima facie* showing that DNA testing, assuming exculpatory results, would establish the defendant's actual innocence. This case does not require us to establish what level of likelihood that the jury's assessment of reasonable doubt would change suffices for the required *prima facie* showing of actual innocence. Nevertheless, such a showing necessarily requires the defendant to establish a logical relationship between the presumed exculpatory DNA results and the defendant's theory of defense in the context of the underlying trial proceedings, as will be required for a later showing of actual innocence. Defendant has not presented anything close to such a showing in this case. Instead, he has asserted only that the sex toys would fail to reveal the victim's DNA evidence, thereby casting doubt on the victim's testimony regarding his use of those items in sexually abusing her, and that the nightgown either would reveal no DNA evidence or evidence of DNA belonging to someone else, either of which would prove that he was not the perpetrator of the crime.

In order to evaluate whether such evidence would have the requisite likelihood to alter the jury's assessment of reasonable doubt, defendant would have had to explain more about the relevance of those two items of evidence (the sex toys and the nightgown) to the overall case against him. Instead, defendant has asserted nothing more than that there was some testimony that he used the sex toys and that the victim wore the nightgown, without any context for the significance of that evidence in the overall evidence that he had abused his daughter (which, according to the state, was shown to have occurred on multiple occasions over a

period of years). Without a further showing, the court is in no position to evaluate how or even if the proposed DNA evidence would alter a jury's assessment of reasonable doubt, an evaluation necessary to a *prima facie* showing of actual innocence.

Affirmed.