Argued and submitted January 14, 2015, Molalla, Oregon, reversed and remanded May 18, petition for review denied November 3, 2016 (360 Or 568)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STRESSLA LYNN JOHNSON,
aka Ira Roscoe Sheppard,
*Defendant-Appellant.*

Multnomah County Circuit Court
871035653, 880431573;
A154905 (Control), A154906

374 P3d 998

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Stressla Lynn Johnson filed the supplemental brief *pro se.*

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Aliza B. Kaplan and Janis C. Puracel filed the brief *amicus curiae* for Oregon Innocence Project.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.*

---

* Shorr, J., *vice* Nakamoto, J. pro tempore.

## ARMSTRONG, P. J.

In these consolidated cases, defendant appeals a trial court order that denied defendant's motions under ORS 138.690 for DNA testing on the ground that defendant had waived in his 1993 plea agreement his right to seek that relief.[1] As explained below, we reverse and remand.

We begin with the pertinent historical and procedural facts, which are undisputed, taking them from the trial court's order:[2]

"Defendant was convicted and sentenced to death in 1989 following a jury trial for aggravated murder (victim: Beverly Gail Wilder) in case number 8710-35653 [A154905]. The conviction was ultimately reversed and remanded for a new trial. [*See State v. Johnson*, 313 Or 189, 832 P2d 443 (1992).] In the interim, defendant was also convicted of aggravated murder (victim: Bobbie Jean Johnson) in 1990 after a jury trial, and sentenced to life imprisonment with a minimum sentence served of 30 years, in case number 8804-31573 [A154906]. While the appeal was pending in the latter case, the state conceded error (introduction of inadmissible evidence of the Wilder murder) and defense counsel prepared a proposal to settle both cases.

"The state and defense subsequently entered into plea negotiations to bring an end to all litigation arising from these cases. It was agreed that defendant would plead 'no contest' to a count of murder in each case and would serve concurrent life sentences with the possibility of parole only after a minimum sentence served of 22 1/2 years (a ten year minimum sentence in case no. 8804-31573 consecutive to a 12 1/2 year minimum sentence in case no. 8710-35653). The negotiations eliminated the possibility of the death penalty for the defendant if again convicted on the first case, and the potential of a consecutive life sentence with a minimum imposed on the second conviction. In addition, numerous other felony charges were dismissed. The state, in conceding these possible sanctions, secured a minimum

---

[1] As explained below, 278 Or App at 351-52, ORS 138.690 authorizes the motion and ORS 138.692 sets out the procedures governing the filing and resolution of the motion. For simplicity, we refer to the process as a motion made under ORS 138.690.

[2] We supplement those facts as necessary with additional undisputed facts from the record.

22 1/2 year term of imprisonment before the possibility of parole with post prison supervision for life, without further trial of either case.

"After several exchanges of the proposed language, the focus of which became the rights the defendant would [forgo], the agreement states in paragraph 10 (see attached) that defendant agrees to waive his right to collaterally attack the convictions without exception:

"'The defendant freely, voluntarily, knowingly and intelligently agrees to waive his [right to collateral attack by state and/or[3]] federal post[-]conviction and/or habeas corpus filings with regards to the validity of the sentence, competence of counsel, the validity of these convictions and any attack on the validity of the proceedings involved underlying his plea of no contest, findings of guilt and sentencing in this matter. The defendant acknowledges that he has been advised by counsel of the alternatives as well as the consequences of this plea agreement including his rights to challenge a sentence by way of direct or collateral attack. The defendant freely, voluntarily, knowingly and intelligently chooses to enter into this agreement and [forgo] litigation of these potential issues. The defendant is satisfied with his counsel and the assistance [he has] received from [defense counsel] in this matter.'"

(Emphases omitted.)

The plea agreement also specified, in paragraph 11, that "any limit upon defendant's right to use post-conviction or habeas corpus remedies would only apply to actions contesting the validity of his murder convictions and would not prevent challenges to conditions of confinement, incarceration or any other action not related to the Wilder and Johnson murder cases." In addition, paragraph 12 provided that, if defendant attempted to challenge the plea agreement, the agreement could be rescinded and the state could reinstate the dismissed charges and seek the death penalty. During plea negotiations, the state rejected a term proposed by defendant's attorney that defendant would not be barred from raising an innocence claim based on newly discovered evidence.

---

[3] The trial court order omits the bracketed words; however, the order purports to quote paragraph 10 of the agreement, which it attached, and paragraph 10 includes that text. Thus, we understand the omission to be inadvertent.

The plea agreement was executed in April 1993. The trial court accepted defendant's pleas and entered judgments of conviction.

In 2001, the legislature enacted a statutory procedure by which certain convicted defendants could request and obtain DNA testing of evidence secured in connection with the prosecution of the cases that led to their convictions. Or Laws 2001, ch 697. That statutory scheme is now codified at ORS 138.690 to 138.698.[4]

In 2007, defendant filed motions under ORS 138.690, requesting the court to order DNA testing of evidence in each of his cases—that is, circuit court case numbers 8710-35653 and 8804-31573. The trial court denied defendant's motions on the ground that the terms of defendant's 1993 plea agreement constituted a waiver of his right to request DNA testing. In particular, the court concluded that the agreement "bar[red] the defendant from seeking new evidence through DNA testing under ORS 138.690 to be used as grounds to collaterally attack [his] convictions on the basis of 'actual innocence.'" Consequently, the trial court did not address whether defendant satisfied the statutory criteria for obtaining DNA testing. Defendant appeals the trial court order denying his motions.[5]

Defendant advances three reasons for reversing the trial court's denial of his motions. First, he contends that the trial court erred in construing the terms of the plea agreement to waive his statutory right to request DNA testing under ORS 138.690, and in any event, judicial enforcement of such a waiver violates public policy. Second,

---

[4] The scheme has been amended several times since its enactment in 2001. *See* Or Laws 2003, ch 288, § 3; Or Laws 2005, ch 759; Or Laws 2007, ch 800, §§ 1-3; Or Laws 2013, ch 152; Or Laws 2015, ch 564. In this opinion, we consider and apply the 2007 version of the statutes, which were in effect when defendant filed his motion.

[5] That order was entered in 2009; we dismissed defendant's first appeal of the order on the ground that it was not appealable and, therefore, we lacked jurisdiction to consider it. *State v. Johnson,* 254 Or App 447, 295 P3d 677, *rev den,* 353 Or 747 (2013). Subsequently, in 2013, the legislature enacted ORS 138.697, authorizing appeal of final orders denying or limiting DNA testing under ORS 138.692. Or Laws 2013, ch 152, § 1. At the same time, the legislature provided a 90-day window for defendants who had previously been denied DNA testing to appeal those denials. Or Laws 2013, ch 152, § 2. Defendant timely filed this appeal within that window.

defendant argues that he could not knowingly have waived a right years before the scientific and legal framework for the right existed.[6] Third, defendant argues that judicial enforcement of such a waiver would be unconstitutional because it would violate due process. As explained below, we agree with defendant's first argument—that the terms of the plea agreement do not preclude defendant from requesting DNA testing under ORS 138.690—and, accordingly, we reverse and remand on that basis.

Contract law principles generally govern the interpretation of a plea agreement. *State v. Heisser*, 350 Or 12, 23, 249 P3d 113 (2011).[7] Thus, we "first 'examine[] the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends.'" *Id.* at 25 (quoting *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (footnote omitted)). "The meaning of an unambiguous contractual provision is a question of law[,]" as is "[t]he determination whether a contractual provision is ambiguous." *Id.* at 25-26. Applying that construct, we conclude that the plea agreement is not ambiguous and that it does not bar defendant from seeking DNA testing under ORS 138.690.

We begin with paragraph 10 of the plea agreement, which, again, provides:

> "The defendant freely, voluntarily, knowingly and intelligently agrees to *waive his right to collateral attack by state and/or federal post-conviction and/or habeas corpus filings with regards to the validity of the sentence, competence of counsel, the validity of these convictions and any attack on the validity of the proceedings involved underlying his plea of no contest, findings of guilt and sentencing in this matter.*

---

[6] The Oregon Innocence Project filed an *amicus curiae* brief also focusing on that argument: It advances the proposition that a "defendant cannot make a 'knowing' waiver of a right that does not exist based on advances in science that could not have been predicted" and urges us to construe the DNA testing statutes broadly "to enhance the truth seeking function of the criminal justice system."

[7] As the court in *Heisser* explained, that general rule is subject to exceptions, given that "[c]riminal cases involve constitutional and statutory rights not ordinarily found in contracts between private parties, and those rights at times may override contractual principles." 350 Or at 23. For example, "a defendant's signature on a written plea agreement is not necessarily sufficient to create a binding agreement; the trial court still may not accept the guilty plea without first determining that the plea is voluntarily and intelligently made." *Id.* at 23-24 (internal quotation marks omitted).

> The defendant acknowledges that he has been advised by counsel of the alternatives as well as the consequences of this plea agreement including his rights to challenge a sentence by way of direct or collateral attack. The defendant freely, voluntarily, knowingly and intelligently chooses to enter into this agreement and [forgo] litigation of these potential issues. The defendant is satisfied with his counsel and the assistance he has received from [defense counsel] in this matter."

(Emphasis added.) The parties' dispute focuses on the meaning of the italicized text; that is, they offer competing views on whether a motion for DNA testing constitutes a "collateral attack by state and/or federal post-conviction * * * filings with regards to the validity of the sentence, competence of counsel, the validity of these convictions and any attack on the validity of the proceedings involved underlying his plea of no contest, findings of guilt and sentencing in this matter" within the meaning of the plea agreement.[8]

As a textual matter, defendant first contends that the parties could only have understood "post-conviction filings" to mean litigation authorized under Oregon's Post-Conviction Hearing Act, ORS 138.510 to 138.680 (the Act), and a motion for DNA testing clearly falls outside the Act. *See* 138.680 (identifying ORS 138.510 to 138.680 as the Post-Conviction Hearing Act); ORS 138.690 - 138.698 (establishing procedures for requesting and obtaining testing of DNA evidence by people convicted of certain crimes). Defendant also argues that the motion is not a collateral attack within the meaning of the agreement because "the only relief under ORS 138.692 is the opportunity to secure DNA testing" and the "testing results may or may not lead to an attack on a conviction."

The state responds that the reference to "post-conviction filings," as used in the plea agreement, is not limited to proceedings under the Act, but must be construed broadly to refer to "*any* collateral attack on defendant's convictions—state or federal—that he might otherwise raise 'post' (or 'after') his convictions," which would include a motion for DNA testing. Relying on *Abercrombie v. Hayden*

---

[8] The parties appear to agree that defendant's motion for DNA testing is not a "habeas corpus" filing.

*Corp.*, 320 Or 279, 291-92, 883 P2d 845 (1994), the state also argues that, to the extent the agreement is ambiguous, we are entitled to consider extrinsic evidence to determine the parties' intentions in making the agreement, and that evidence shows that the parties intended the agreement to exclude the type of litigation that defendant is pursuing here. As to defendant's second argument, the state contends that, "because the motion for DNA testing is a necessary part of the procedure allowing a defendant to challenge a conviction in the underlying trial court after the conviction is final, it is part of a collateral attack on a conviction."

We conclude that, even if a motion for DNA testing under ORS 138.690 is a "post-conviction filing" within the meaning of the plea agreement, it is, nonetheless, not barred by the agreement because it does not constitute a "collateral attack * * * with regards to the validity of the sentence, competence of counsel, the validity of these convictions and any attack on the validity of the proceedings involved underlying his plea of no contest, findings of guilt and sentencing in this matter." Setting aside whether such a motion is *collateral*,[9] we agree with defendant that, because the motion does not challenge the validity of defendant's convictions or sentences, nor the proceedings underlying his plea and sentencing or the competency of his counsel, the agreement unambiguously does not preclude defendant's motions.

An examination of the statutory scheme governing DNA testing compels that conclusion.[10] As relevant here, ORS 138.690 authorizes a person "incarcerated in a Department of Corrections institution as the result of a conviction for aggravated murder or a person felony" to file, in the circuit court in which the person was convicted, "a motion requesting the performance of DNA (deoxyribonucleic acid) testing on specific evidence." ORS 138.692 governs what must be filed with the motion and sets out the standard for granting the motion, among other things. Specifically, subsection (1) provides that the motion must be supported by an affidavit containing a statement that the person is innocent of the

---

[9] *See* 278 Or App at 353 n 13.

[10] We remind our readers that we are describing the 2007 version of the statutes. 278 Or App at 348 n 4.

crime for which the person was convicted, identifying the specific evidence to be tested and a defense theory that the DNA testing would support, and including the results of any previous DNA testing of the specified evidence. Under subsection (2), the court is required to order DNA testing if certain conditions are satisfied, including that "[t]here is a reasonable possibility that the testing will produce exculpatory evidence that would establish the innocence of the person of" the crime for which the person was convicted. ORS 138.692(2)(d)(A). Unless otherwise agreed to by the parties, the testing is done by the Department of State Police and the results must be disclosed to the person filing the motion and to the state. ORS 138.692(6).

What happens next depends on the results of the testing. ORS 138.696. If the evidence is inconclusive or unfavorable to the person who requested the testing, the Department of State Police compares the results to DNA evidence from unsolved crimes, and the court forwards the results of the testing to the State Board of Parole and Post-Prison Supervision. ORS 138.696(1). On the other hand, if the DNA testing "produces exculpatory evidence, the person who requested the testing may file in the court that ordered the testing a motion for a new trial based on newly discovered evidence." ORS 138.696(2).[11]

Thus, a successful motion under ORS 138.690 yields, at best, an order for DNA testing, which is plainly not, itself, an attack (collateral or otherwise) on the validity of defendant's conviction, sentence, competency of counsel, or plea proceeding. In other words, the motion itself cannot be said to raise a challenge prohibited by the plea agreement.[12] That it might, eventually, lead to such a challenge

---

[11] The person must do so within 60 days of receiving the test results, and the court is required to hear the motion notwithstanding the time limits in ORCP 64 F. ORS 138.696(2), (3). Under ORCP 64 F(1), a motion to set aside a judgment and for a new trial must be filed "not later than 10 days after the entry of the judgment sought to be set aside, or such further time as the court may allow."

[12] The state's contextual arguments do not undermine that conclusion. Moreover, because we conclude that the plea agreement, by its terms, does not bar defendant's motions, the state's argument regarding extrinsic evidence of the parties' intentions in forming the agreement is immaterial. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995) ("In the absence of an ambiguity, the court construes the words of a contract as a matter of law.").

is beside the point. Only if the testing produces exculpatory results is defendant entitled to file a motion for a new trial based on newly discovered evidence; we leave for another day the question whether *that* filing would be barred by the plea agreement.[13]

Our recent decision in *State v. Harris*, 272 Or App 774, 358 P3d 313 (2015), *rev den*, 358 Or 611 (2016), is consistent with that conclusion. In *Harris*, the trial court entered an order granting defendant's motion for DNA testing under ORS 138.690; the order also provided that, if the testing failed to produce exculpatory evidence, the defendant was "'forever * * * barred from collaterally attacking his convictions in this case, including any appeal, post-conviction or habeas corpus proceedings.'" 272 Or App at 776. The question before us was whether that constituted an order "limiting DNA * * * testing under ORS 138.692," such that the order was appealable under ORS 138.697. 272 Or App at 777.[14] The defendant contended that it was. We disagreed, reasoning, first, that the operative language of the order— barring defendant from "collaterally attacking" his conviction and referring specifically to appeal, post-conviction relief, and habeas corpus—did not mention DNA testing. "Further, and decisively," we reasoned, "a motion for DNA testing under ORS 138.692 is not itself a challenge to the defendant's conviction; rather, the motion for DNA testing merely sets the stage for a *potential* challenge to the judgment of conviction." 272 Or App at 778 (emphasis in original). That reasoning is equally applicable in these circumstances.

Accordingly, we reverse and remand for the trial court to consider the merits of defendant's motions.

Reversed and remanded.

---

[13] *But see State v. Harris*, 272 Or App 774, 778, 358 P3d 313 (2015), *rev den*, 358 Or 611 (2016) (observing that a motion for a new trial after DNA testing produces exculpatory results "would be a challenge to the defendant's conviction, but, because the motion is filed in the same action that gave rise to the judgment of conviction and sentence, the motion is a direct, not a collateral, attack on the validity of the conviction").

[14] ORS 138.697 provides, in relevant part, that a "person described in ORS 138.690 may appeal to the Court of Appeals from a circuit court's final order or judgment *denying or limiting DNA (deoxyribonucleic acid) testing under ORS 138.692*." (Emphasis added.)