Argued and submitted September 24, 2015, affirmed March 29, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD ANTHONY JENKINS,
*Defendant-Appellant.*

Multnomah County Circuit Court
071135698; A154925

393 P3d 1184

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carolyn Alexander, Assistant Attorney General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**ORTEGA, P. J.**

Defendant appeals an order denying his motion for DNA testing, arguing that the trial court erroneously concluded that he had not met the requirements set out in ORS 138.692 and, in particular, that he had failed to present a *prima facie* showing that DNA testing would, assuming exculpatory results, establish his actual innocence.[1] In defendant's affidavit in support of his motion, he included the results from prior DNA testing of a sweat jacket associated with robberies for which he was convicted, which identified defendant as a major contributor of DNA to the sweat jacket and were used as evidence against him in his criminal trial. Reviewing the trial court's determination for legal error, *see State v. Romero*, 274 Or App 590, 599, 360 P3d 1275 (2015), *rev den*, 358 Or 794 (2016), and given the prior DNA results, we conclude that defendant has not established how favorable DNA tests results from retesting the sweat jacket would establish his actual innocence. Accordingly, the trial court did not err in denying defendant's motion for DNA testing, and we affirm.

Defendant was convicted in 2008, following a bench trial, of two counts of first-degree robbery with a firearm, three counts of second-degree robbery with a firearm, and three counts of felon in possession of a firearm. The convictions arose from two robberies committed at a Portland bar on different dates in 2007.

In 2009, defendant moved to allow independent testing of forensic evidence under ORS 138.690 ("A person may file in the circuit court in which the judgment of conviction was entered a motion requesting the performance of DNA (deoxyribonucleic acid) testing on specific evidence ***."). As required by ORS 138.692(1),[2] he also provided an

---

[1] In 2015, the legislature amended, as relevant here, ORS 138.690 and ORS 138.692. Or Laws 2015, ch 564, §§ 1, 2. Those amendments do not apply to defendant's motion for DNA testing because he sought and was denied relief in 2009. We refer to the 2009 version of the statutes in this opinion.

[2] ORS 138.692 provided, in part:

"(1)(a) When a person files a motion under ORS 138.690 requesting the performance of DNA (deoxyribonucleic acid) testing on specified evidence, the motion must be supported by an affidavit. The affidavit must:

affidavit, which acknowledged that the evidence at issue, a white sweat jacket decorated with gold logos, had already been tested by Dr. Scott, a forensic scientist, at the Oregon State Police Forensic Laboratory (OSP crime lab). That test, according to the affidavit and an attached lab report, indicated that three individuals contributed DNA evidence to the sweat jacket and identified defendant as the major contributor. Defendant also stated in his affidavit that his criminal trial counsel had obtained state funding to hire a DNA expert, Intermountain Forensics, for his defense.[3] Defendant also swore that the sweat jacket did not belong to him and that he had never worn it. In defendant's view, because he had no connection to the sweat jacket, he could not have contributed any of the discovered DNA. He also asserted that an independent test will "prove as a matter of factual evidence that there does not exist any DNA from

"(A)(i) For a person described in ORS 138.690(1), contain a statement that the person is innocent of the offense for which the person was convicted or of the conduct underlying any mandatory sentence enhancement; * * *

"* * * * *

"(B) Identify the specific evidence to be tested and a theory of defense that the DNA testing would support. The specific evidence must have been secured in connection with the prosecution, including the investigation, that resulted in the conviction of the person; and

"(C) Include the results of any previous DNA test of the evidence if a previous DNA test was conducted by either the prosecution or the defense.

"(b) The person must present a prima facie showing that DNA testing of the specified evidence would, assuming exculpatory results, establish the actual innocence of the person of:

"(A) The offense for which the person was convicted[.]

"* * * * *

"(2) The court shall order the DNA testing requested in a motion under subsection (1) of this section if the court finds that:

"(a) The requirements of subsection (1) of this section have been met; [and]

"* * * * *

"(d) There is a reasonable possibility that the testing will produce exculpatory evidence that would establish the innocence of the person of:

"(A) The offense for which the person was convicted[.]"

[3] Defendant asserts that his counsel sought funding for an expert for independent DNA *testing*. In fact, the exhibits submitted by defendant in support of his affidavit indicate that his attorney sought funding, which was ultimately authorized, for Intermountain Forensics to *review* the OSP crime lab's results. Defendant's affidavit and exhibits do not indicate what the review concluded, or even if the review took place.

Defendant that contributes to the mixture of three individuals." Therefore, defendant posited that "such a test will prove as a matter of fact that the State obtained its conviction upon fabricated evidence that has not been established as evidence of fact."

The trial court ruled that defendant's affidavit did not satisfy the requirements of ORS 138.692(1) and denied defendant's motion for DNA testing. Defendant appeals the order, arguing that, because the legislature's intent in enacting the DNA testing statute was to set a "low bar" for DNA testing, the task of the trial court deciding the motion must be to order testing if the "theory put forward by the defendant *could* result in proof of the defendant's innocence." (Emphasis in original.) Further, defendant asserts that the facts alleged in the pleadings must be viewed in the light most favorable to defendant, the party required to make a *prima facie* showing of actual innocence.

Under that standard, defendant contends that he met all of the requirements set out in ORS 138.692(1), namely, that he attested that he was innocent of the robbery felonies for which he was convicted, ORS 138.692(1)(a)(A)(i); he identified the specific evidence to be tested—the sweat jacket secured in the investigation—and put forth a theory of defense that independent DNA testing would support, ORS 138.692(1)(a)(B); he included the results of the DNA testing conducted by the OSP crime lab, ORS 138.692(1)(a)(C); and, he presented a *prima facie* showing that DNA testing of the sweat jacket would, assuming exculpatory results, establish his actual innocence, ORS 138.692(1)(b). In particular, his theory of defense is that DNA testing will establish that he never wore the sweat jacket used as evidence connecting him to the robberies and that the OSP crime lab testing results were fabricated or erroneous.[4]

The state responds that the trial court correctly determined that defendant did not meet his burden of making a *prima facie* showing of actual innocence, as required by ORS 138.692(1)(b)(A), because, even if DNA retesting

---

[4] Defendant also argues that the trial court's denial of his motion for DNA testing violated his constitutional rights under the Fourteenth Amendment to the United States Constitution. We reject that argument without further discussion.

results were different from the initial testing, they would not exonerate defendant. Moreover, in the state's view, even if independent DNA testing were to result in not finding a match with defendant's DNA, there could be a number of explanations that could explain such results. Further, the state argues, defendant's assertions that he never wore the sweat jacket, and that the DNA testing results were fabricated, are conclusory and offered without any evidence to support them.

After briefing and argument in this case, we decided *Romero*, which addressed what ORS 138.692(1) requires of a defendant's affidavit supporting a request for DNA testing. In *Romero*, the defendant filed a motion for DNA testing and, in supporting affidavits, identified two specific sex toys and the victim's nightgown which he sought to have tested for DNA evidence. 274 Or App at 591-92. The defendant's theory was that the absence of the victim's DNA on the sex toys would exonerate him by impeaching the victim's testimony, and the absence of his DNA on the nightgown, or DNA evidence pointing to another perpetrator, would prove that he was not the perpetrator of the crime. *Id*. After a hearing, the trial court denied the defendant's motion, concluding that the defendant had failed to make a showing as to how DNA testing might exonerate him. *Id*. at 593. On appeal, the defendant argued that DNA evidence, assuming exculpatory results, would "undermine" the state's theory used to convict him by either revealing that none of the DNA belonged to him or the victim or by revealing the DNA of the true perpetrator. *Id*. at 594. Moreover, the defendant construed the requisite showing required by ORS 138.692 in the following way:

> "[I]n order to satisfy the requirements for DNA testing, it is sufficient to (1) identify the evidence to be tested, (2) state a theory of defense, and (3) attest to the defendant's innocence of the crime of conviction. If a defendant satisfies those requirements through pleadings, then the court is only required to consider whether the defendant's theory of defense 'could' prove his innocence, assuming exculpatory DNA results. According to defendant, the trial court does not have to weigh the strength of other evidence against the defendant in making its determination and,

likewise, a defendant does not need to prove how the DNA results would overcome the evidence presented during the defendant's criminal trial."

274 Or App at 595. The state responded, conceding that the defendant need not offer conclusive proof of actual innocence, that a defendant must nevertheless "establish[] a *prima facie* showing of actual innocence by presenting some evidence or providing some context to show how the potential DNA results could support a finding of actual innocence." *Id.*

Construing the meaning of ORS 138.692(1)(b)— "DNA testing of the specified evidence would, assuming exculpatory results, establish the actual innocence of the person"—we reasoned that, "[c]ontrary to defendant's approach, something more than a defendant's mere assertion of his innocence is required to make the *prima facie* showing required by statute." *Id.* at 597. Further, we stated that, in "assessing whether a defendant has made a *prima facie* showing that exculpatory DNA evidence would establish 'actual innocence,' we are called upon to assess whether there is some likelihood that such evidence would give rise to reasonable doubt about the defendant's guilt." *Id.* at 598. Although we did not establish the level of likelihood required to change the factfinder's assessment of reasonable doubt,[5] we did conclude that a *prima facie* showing of actual

---

[5] In *Romero*, we concluded that our approach is similar to the one adopted by the United States Supreme Court in *Schlup v. Delo*, 513 US 298, 115 S Ct 851, 130 L Ed 2d 808 (1995), and *House v. Bell*, 547 US 518, 126 S Ct 2064, 165 L Ed 2d 1 (2006), for the analogous (although occurring at a later stage) context of federal habeas corpus proceedings. *Romero*, 274 Or App at 598. "This case does not require us to establish what level of likelihood that the jury's assessment of reasonable doubt would change suffices for the required *prima facie* showing of actual innocence." *Id.* at 599. In *Schlup*, to show procedural or "gateway" actual innocence, a prisoner seeking habeas corpus review of procedurally defaulted claims of constitutional error leading to conviction must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." 513 US at 327. The Court clarified that standard in *House*, stating that

"the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt."

547 US at 538.

innocence "necessarily requires the defendant to establish a logical relationship between the presumed exculpatory DNA results and the defendant's theory of defense in the context of the underlying trial proceedings, as will be required for a later showing of actual innocence." *Id.* at 599. And, we concluded that the defendant failed to explain a logical relationship between the presumed exculpatory DNA testing results and a theory of defense that addressed the overall case against him. *Id.*

*Romero* is dispositive of defendant's arguments in this case concerning what is required under ORS 138.692(1) to establish a *prima facie* showing of actual innocence: Defendant must establish a logical relationship between the presumption that independent testing would not find his DNA on the sweat jacket and his theory of defense, in such a way as would lead to a finding of actual innocence. He has not done so.

That is so because, other than the bare allegations that the initial DNA test results were wrong or fabricated, defendant did not present anything in his affidavit that calls into question the legitimacy or accuracy of the OSP crime lab's results. Defendant failed to substantiate his claim with evidence supporting that allegation, such as some factual basis for calling into question the integrity of Scott or the OSP crime lab. Likewise, defendant did not put forward any basis for a court to find that the methods of Scott or the OSP crime lab were faulty or inadequate, or that the sought-for independent DNA testing would employ better or more accurate testing methods. Without such a showing, the best defendant could hope to demonstrate with results that do not show his DNA on the sweat jacket are merely results that differ from the original testing—especially because the kind of evidence at issue is not susceptible to the kind of highly exculpatory or exonerative weight afforded by DNA evidence in other circumstances (such as when there can only be a single perpetrator of a crime or when the fact of the crime itself is at issue). Also, the initial DNA test results already indicated DNA of two other unknown individuals, so a retest that indicated DNA of other individuals would be duplicative of evidence available in defendant's original trial.

Accordingly, even if we assume that the results of independent retesting of the sweat jacket would not show defendant's DNA, and would thus be favorable to defendant, there is no reason to believe that that evidence would establish defendant's actual innocence. The trial court therefore did not err in denying defendant's motion for DNA testing.

Affirmed.