HADLOCK, J.
*38 Defendant unsuccessfully moved for DNA testing under ORS 138.690 (2011).[1] He *934 appeals the trial court's order denying the request for DNA testing on two grounds. First, defendant contends that, having previously entered an order granting the motion, the trial court erred when it later withdrew that order and denied defendant's request for testing. Second, defendant asserts that he met his burden of presenting a prima facie case of actual innocence; that showing, defendant argues, triggered "the trial court's duty to order testing." We disagree with defendant on both points and, accordingly, affirm.
The pertinent facts are undisputed. Defendant was convicted in 2004 of, among other things, first-degree manslaughter. He received a sentence of 120 months in prison followed by 36 months of post-prison supervision. The convictions arose from a hit-and-run accident between defendant's truck and a bicycle, which the truck dragged for some distance after the crash. Based on witness descriptions of the truck, police stopped defendant-who then was driving the truck-half an hour after the accident was reported. Defendant admitted to being intoxicated. Defendant told police that he had been drinking with an acquaintance and that, after defendant had fallen asleep, that other person had used defendant's truck to go pick up more alcohol. According to defendant, the acquaintance had returned the truck in a damaged condition, the two had argued, and defendant had driven the truck away. Defendant was wearing a blue jacket when police stopped him; he said the jacket belonged to the acquaintance.
*39 On direct appeal, we affirmed defendant's conviction without opinion. State v. Diaz-Avalos , 206 Or. App. 769, 140 P.3d 582, rev. den. , 342 Or. 117, 149 P.3d 139 (2006). Defendant then petitioned for post-conviction relief, which the post-conviction court denied. We also affirmed that decision without opinion. Diaz-Avalos v. Belleque , 241 Or. App. 723, 250 P.3d 992, rev. den. , 350 Or. 408, 256 P.3d 121 (2011). Defendant then petitioned for habeas corpus relief in federal court. The district court denied defendant's petition.
During the federal habeas corpus litigation, the district court authorized defendant's counsel to assist defendant in seeking DNA testing under Oregon's DNA testing statutes. Defendant filed a state-court motion requesting DNA testing in November 2012. A supporting affidavit clarified that defendant believed there was "a reasonable possibility that the jacket [found on defendant at the time of his arrest] contains DNA evidence that can support [defendant's] position that he was not the driver that killed the victim in his case." Defendant did not follow the process set by local rule for scheduling a hearing on the motion, and the state did not file a response to it. The trial court granted defendant's motion without a hearing in September 2013, the month after defendant was released on post-prison supervision.
In late 2014, the state filed a motion asking the trial court to set aside its order granting defendant's motion requesting DNA testing; the state based that motion on defendant having not followed the process to set the motion for hearing and the court not having asked the state to file a response to the motion. Following a hearing, the trial court set aside its previous order granting defendant's motion for testing. The court did so based on its determination that it had committed "an error" by issuing the order for DNA testing without first holding a hearing and "notwithstanding the fact that *** [the court] was waiting around for a response" from the state. The court issued an order to that effect in April 2015.
Defendant appealed the trial court's order setting aside its previous order. The appellate commissioner initially ruled that the order was not appealable; however, defendant *40 sought reconsideration, and the commissioner ultimately gave the trial court leave "to enter an order explicitly denying appellant's motion for DNA testing[.]" The trial court then entered an order denying defendant's motion requesting DNA testing in February 2017, and defendant promptly gave notice of his intent to proceed with this appeal. *935 By that time, defendant had completed serving his term of post-prison supervision.
Before describing the arguments that the parties make on appeal, we provide an overview of Oregon's statutory DNA-testing scheme. At the time defendant filed his motion requesting DNA testing, ORS 138.690 provided, in relevant part:
"A person may file in the circuit court in which the judgment of conviction was entered a motion requesting the performance of DNA (deoxyribonucleic acid) testing on specific evidence if the person:
"(1) Is incarcerated in a Department of Corrections institution as the result of a conviction for aggravated murder or a person felony as defined in the rules of the Oregon Criminal Justice Commission; or
"(2) Is not in custody but has been convicted of aggravated murder, murder or a sex crime ***."
Subsection (1) of ORS 138.692 set out requirements that a person seeking DNA testing had to meet, including that the motion be supported by an affidavit identifying "the specific evidence to be tested and a theory of defense that the DNA testing would support." ORS 138.692 (1)(a)(B). The affidavit was also required to include a statement that the person filing the motion "is innocent of the offense for which the person was convicted[.]" ORS 138.692(1)(a)(A)(ii). In addition, subsection (1) required the person seeking DNA testing to "present a prima facie showing that DNA testing of the specified evidence would, assuming exculpatory results, establish the actual innocence of the person of" the "offense for which the person was convicted[.]" ORS 138.692(1)(b)(A).
Subsection (2) of ORS 138.692 required the trial court to "order the DNA testing requested" if the court found *41 that several requirements were satisfied, including that "[t]he requirements of subsection (1) of this section have been met" and that "[t]here is a reasonable possibility that the testing will produce exculpatory evidence that would establish the innocence of the person of" the offense of conviction. ORS 138.692(2)(a), (d)(A).
Ultimately, defendant and the state disagree about whether defendant satisfied the requirement that he present a prima facie case showing that DNA testing would, assuming exculpatory results, establish his actual innocence. Preliminarily, however, both parties contend-for different reasons-that we should not reach that question. The state argues that we lack jurisdiction over this appeal. Defendant argues that we have jurisdiction, and he urges us to reverse the trial court on the ground that it lacked authority to set aside its original order requiring DNA testing. We begin by addressing those procedural arguments, both of which we reject.
We first consider the state's argument that we do not have jurisdiction. As originally enacted, the DNA-testing statutes did not include a provision addressing whether either party had a right to appeal orders granting or denying requests for DNA testing. In State v. Johnson , 254 Or. App. 447, 455, 295 P.3d 677, rev. den. , 353 Or. 747, 304 P.3d 39 (2013), we held that the absence of such a provision left a defendant with no ability to appeal an order denying a DNA-testing motion. Thus, we concluded that "we [were] without jurisdiction" to consider an appeal that a defendant had purported to take from such an order.
Within several months after we issued that opinion, the legislature enacted an appeal provision, ORS 138.697. Or. Laws 2013, ch. 152, § 1. See State v. Johnson , 278 Or. App. 344, 348 n. 5, 374 P.3d 998, rev. den., 360 Or. 568, 385 P.3d 82 (2016) (describing that history). ORS 138.697(1) provides that "[a] person described in ORS 138.690 may appeal to the Court of Appeals from a circuit court's final order or judgment denying or limiting DNA (deoxyribonucleic acid) testing under ORS 138.692 ***."
*42 The wording of that appeal statute is key to the state's argument that we lack jurisdiction.[2] The state contends that, for purposes of ORS 138.697(1), defendant is not "[a] person described in ORS 138.690" and, therefore, *936 had no right to appeal. At the time defendant filed the motion, ORS 138.690(1), the applicable subsection, provided that a person could move for DNA testing on specific evidence if the person:
"Is incarcerated in a Department of Corrections institution as the result of a conviction for aggravated murder or a person felony as defined in the rules of the Oregon Criminal Justice Commission[.]"[3]
Although defendant was incarcerated when he filed his DNA-testing motion in 2012, he had been released from prison by the time that the trial court issued its original order granting defendant's DNA-testing request. Defendant also no longer was incarcerated when he filed his notice of appeal from the subsequent order setting aside that original order. Because defendant was no longer incarcerated, the state contends that he was no longer "[a] person described in ORS 138.690"-because that statute refers to a person who "[i]s incarcerated"-even though he had been in prison when he filed his original DNA-testing motion.
Defendant takes a different view of ORS 138.697 and its relationship to ORS 138.690(1). He contends that the incarceration condition in the latter statute applies only to the date on which the person files the motion requesting DNA testing. According to defendant, his custody status at later times is irrelevant.
We interpret ORS 138.697 and ORS 138.690 to determine whether the legislature intended a person in defendant's situation to be "[a] person described in ORS 138.690" for purposes of ORS 138.697. State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009) (discerning legislature's intention is statutory interpretation's "paramount goal"). Our analysis *43 below depends on statutory text and context; we have found no legislative history of the 2013 enactment of ORS 138.697 that we consider helpful to our analysis.
As noted, ORS 138.690(1) says that a person who "[i]s incarcerated in a Department of Corrections institution" as a result of certain crimes "may file" a motion requesting DNA testing. That statute refers only to the person's incarceration status at the time of filing. Nothing in ORS 138.690(1) or any part of the statutory scheme for post-conviction motions for DNA testing requires that the person remain incarcerated after the person files that motion.
The question, however, is whether the reference in ORS 138.697 to "[a] person described in ORS 138.690" limits the right to appeal only to a person who "is incarcerated" at the time the person seeks appeal, as the state contends, or creates a right to appeal for any person who met the filing requirements at the time of filing, as defendant argues. Reading the statutory scheme for post-conviction DNA testing as a whole, we share defendant's view that ORS 138.697 extends the right to appeal to any individual who was entitled to (and did) file an ORS 138.690 motion, regardless of the individual's incarceration status at the time he or she filed a notice of appeal from the subsequent denial of that motion. We do so for several reasons.
First, ORS 138.690 and ORS 138.697 are, by their terms, relevant at different points in time. The former statute sets out requirements that a person must meet on the date that the person files the DNA-testing motion; the latter statute relates to a subsequent date on which, if unsuccessful, the person files a notice of appeal. If the legislature intended to limit the ability to appeal to people who remained incarcerated at the time of appeal, it seems unlikely that it would do so by including a cross-reference in ORS 138.697 to a statute identifying requirements that a person had to meet at an earlier point in time.
Second, and relatedly, ORS 138.690"describes" (to use the ORS 138.697 terminology) certain individuals who are entitled to "file *** a motion requesting" DNA testing of evidence. The statute does not purport to identify the circumstances under which a person may properly appeal an *44 order denying such a motion. The plainest way to construe *937 "[a] person described in ORS 138.690" is as a person whose circumstances ORS 138.690 addresses, that is, a person who has met the requirements for filing a motion for DNA testing.
Third, ORS 138.690 identifies more than one circumstance in which a person may be entitled to move for DNA testing. Subsection (1) describes individuals who, like defendant, are incarcerated "as the result of a conviction for aggravated murder or a person felony" at the time they file the motion. But subsection (2) describes another category of people who may seek DNA testing-individuals who are not in custody but who have been convicted of aggravated murder, murder, or certain sex crimes. ORS 138.690(2). As defendant suggests, the reference in ORS 138.697 to "[a] person described in ORS 138.690" is a simple way for the legislature to refer to all individuals-both incarcerated and unincarcerated-who properly requested DNA testing.
Fourth, when the 2013 legislature enacted ORS 138.697, creating a right of appeal from orders denying motions for DNA testing, it also "provided a 90-day window for defendants who had previously been denied DNA testing to appeal those denials. Or. Laws 2013, ch. 152, § 2." Johnson , 278 Or. App. at 348 n. 5, 374 P.3d 998. That provision suggests a legislative intention to make the appeal right broadly available-an intention more in keeping with defendant's interpretation of ORS 138.697 than with the state's, which would constrain the right of appeal for those individuals described in ORS 138.690(1).
For all those reasons, we conclude that the cross-reference to ORS 138.690 in ORS 138.697 is meant to identify those individuals who met the ORS 138.690 requirements at the time they filed their motions for DNA testing. Defendant was incarcerated on a conviction for a person felony at the time he filed his DNA-testing motion and he timely filed a notice of appeal from the order denying that motion. Accordingly, we have jurisdiction over his appeal.
We turn to defendant's argument that the trial court lacked authority, in 2015, to set aside its 2013 order *45 granting defendant's motion for DNA testing. Defendant asserts that the state could have appealed the 2013 order and, because the state failed to do so, that order became final and the trial court could not properly set it aside. We disagree. Defendant is correct that, ordinarily, "a trial court cannot amend a judgment-or enter a new judgment-to revive a party's right to appeal, when the party has lost that right by not timely appealing an earlier judgment or appealable order that embodies the ruling that the party wishes to challenge." State v. Fenton , 294 Or. App. 48, 58, --- P.3d ---- (2018). However, an exception to that rule exists "when the circuit court mistakenly entered the original judgment or appealable order." Id . at 58 n. 5, --- P.3d ----. In that circumstance, the court may "act[ ] to cure a prejudgment procedural irregularity," such as a premature entry of an order or judgment that "circumvented a prejudgment procedure that would have permitted [a party] to be heard[.]" State v. Ainsworth , 346 Or. 524, 540-41, 213 P.3d 1225 (2009). Here, the trial court explained that it was setting aside the 2013 order because of its own "error" in entering the order without first holding a hearing on defendant's DNA-testing motion or seeking a response from the state, in keeping with the court's practice. Under Ainsworth , the court had authority to set aside the order that the state had failed to appeal.
The remaining question is whether defendant made a prima facie showing of actual innocence assuming exculpatory results as ORS 138.692(1)(b) requires. We review for legal error. State v. Jenkins , 284 Or. App. 567, 568, 393 P.3d 1184, rev. den. , 362 Or. 300, 408 P.3d 1078 (2017). "[A]ssessing whether a defendant has made a prima facie showing that exculpatory DNA evidence would establish 'actual innocence,' " requires us to "assess whether there is some likelihood that such evidence would give rise to reasonable doubt about the defendant's guilt." State v. Romero , 274 Or. App. 590, 597-98, 360 P.3d 1275 (2015), rev. den. , 358 Or. 794, 370 P.3d 502 (2016). "[S]omething more than a defendant's mere assertion of his innocence is required to make the prima facie showing required by statute." Id . at 597, 360 P.3d 1275. We have not established *938 what level of likelihood of the factfinder's assessment changing is required for a prima facie showing of actual innocence, but we have emphasized that "such a showing necessarily requires the *46 defendant to establish a logical relationship between the presumed exculpatory DNA results and the defendant's theory of defense in the context of the underlying trial proceedings, as will be required for a later showing of actual innocence." Id. at 599, 360 P.3d 1275 ; see also Jenkins , 284 Or. App. at 572-73, 393 P.3d 1184 (requiring logical relationship between requested DNA testing and actual innocence theory of defense).
In Romero , the defendant had been convicted of multiple sex crimes against his daughter. He sought DNA testing on two sex toys and a nightgown, arguing that an absence of the victim's DNA on the sex toys would impeach her testimony and the absence of his DNA or the presence of another person's DNA on the nightgown would exonerate him. 274 Or. App. at 591-92, 360 P.3d 1275. We held that the defendant had failed to establish the necessary logical relationship between the presumed exculpatory DNA results and his theory of defense, because he had not sufficiently explained the relevance of the sex toys and nightgown "to the overall case against him." Id. at 599, 360 P.3d 1275.
Similarly, in Jenkins , the defendant sought DNA testing of a jacket. Jenkins , 284 Or. App. at 568, 393 P.3d 1184. The jacket, which had been associated with robberies, had previously been tested; the results identified the defendant as a major DNA contributor and were used against him in his trial. Id. The defendant argued that the jacket was not his and that new DNA testing would show none of his DNA, proving that the state fabricated the DNA evidence against him. Id. at 569, 393 P.3d 1184. We again held that the logical relationship between the presumed exculpatory DNA results and the theory of defense had not been established. Id . at 573, 393 P.3d 1184. The best that the defendant could hope for would be to show that the new testing did not reveal the defendant's DNA on the jacket, and we concluded "there [was] no reason to believe that that evidence would establish defendant's actual innocence." Id. at 574, 393 P.3d 1184.
Here, defendant seeks DNA testing of the jacket he was wearing when he was arrested on the theory that "the jacket contains DNA evidence that can support [defendant's] position that he was not the driver that killed the victim in his case." Defendant maintained throughout his trial that he *47 was not the driver who struck the victim and that he found the jacket in the truck when his acquaintance returned the truck in damaged condition. He hopes to establish the presence of his acquaintance's DNA on the jacket.
Defendant does not explain how the presence of another person's DNA on the jacket would prove that the person to whom the DNA belongs was driving the truck when it struck the victim. The most that defendant could reasonably hope for is that DNA testing would show both that the acquaintance's DNA was on the jacket and that defendant's own DNA was on the jacket (because he wore it). That result would not establish defendant's "actual innocence"; at most, it would establish that the acquaintance wore or otherwise came into contact with the jacket at some point in time. In short, defendant has not established that there is some likelihood that DNA testing of the jacket, even assuming the results he hopes for, would give rise to reasonable doubt about his guilt. He therefore has not established a prima facie case of actual innocence. The trial court did not err when it denied his motion for DNA testing.
Affirmed.

The statutes governing post-conviction DNA testing, ORS 138.690 to 138.698, were amended in 2015 and the new amendments became effective in 2016, after defendant filed the motion and before the trial court denied it. Or. Laws 2015, ch. 564. Except as otherwise noted, we apply the 2011 version of the statutes in this opinion and all references to the statutes-with one exception-are to the 2011 version. That exception is ORS 138.697, which creates the right to appeal from several types of orders and judgments related to motions for DNA testing, including a final order denying DNA testing under ORS 138.692. The legislature enacted ORS 138.697 in 2013, before defendant filed his notice of appeal. Or. Laws 2013, ch. 152, § 1. The legislature amended the statute in 2015, Or. Laws 2015, ch. 564, § 5, and again in 2017, Or. Laws 2017, ch. 529, § 25. We apply the 2013 version of ORS 138.697 in this case.

The parties agree-as do we-that the appeal provision applies in this case, as it was enacted and became effective before defendant filed his notice of appeal.

In 2015, the legislature amended ORS 138.690 so that it no longer carries that incarceration requirement. Or. Laws 2015, ch. 564, § 1.