IN THE SUPREME COURT OF THE STATE OF DELAWARE

| STATE OF DELAWARE, | § | |
|---|---|---|
| | § | No. 692, 2015 |
| Plaintiff-Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 9808000280A |
| DAMONE FLOWERS, | § | |
| | § | |
| Defendant-Below, | § | |
| Appellee. | § | |

Submitted: September 14, 2016
Decided: October 21, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN** and **SEITZ**, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED**.

Elizabeth R. McFarlan, Esquire *(Argued)*, Department of Justice, Wilmington, Delaware, Attorney for Plaintiff-Below, Appellant.

Michael W. Modica, Esquire *(Argued)*, Wilmington, Delaware, Attorney for Defendant-Below, Appellee.

**HOLLAND**, Justice; for the Majority:

The defendant-below, appellee, Damone Flowers' second Motion for Post-Conviction Relief was referred to a Superior Court Commissioner, who issued a report recommending that the Superior Court grant Flowers' motion for relief. The Superior Court adopted in part and denied in part the Commissioner's report and granted Flowers' relief. The State appeals from the Superior Court's final judgment.

The State argues that Flowers' second Motion for Post-Conviction Relief was untimely under Criminal Rule 61(i)(1), because it was filed more than three years after his conviction became final in September 2004. The State also argues that the claims in that motion were barred as repetitive under Rule 61(i)(2), because the claims were not raised in Flowers' first Motion for Post-Conviction Relief.

The Superior Court correctly recognized that Flowers' Post-Conviction motion was untimely under Criminal Rule 61(i)(1), as he filed the motion more than three years after his conviction became final with the issuance of the mandate from this Court in September 2004. The Superior Court also correctly recognized that the claims in the motion were barred as repetitive under Rule 61(i)(2), because the claims could have been, but were not, raised in Flowers' first Motion for Post-Conviction Relief.

However, the Superior Court invoked an exception to the procedural bars as a basis for addressing Flowers' motion on the merits. At the time of Flowers' second Motion for Post-Conviction Relief, the bars to relief in Rule 61(i)(1)-(3) did not

2

apply "to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity[,] or fairness of the proceedings leading to the judgment of conviction."[1]

We have concluded that Flowers' second Motion for Post-Conviction Relief was untimely and that the exception to those procedural bars was not properly invoked by the Superior Court. Therefore, the judgment of the Superior Court must be reversed.

### *Direct Appeal*

Flowers was convicted of Murder in the First Degree and Possession of a Firearm during the Commission of a Felony on October 30, 2002, and sentenced to life in prison, plus ten years. On August 31, 2004, this Court affirmed Flowers' convictions. The historical facts which led to Flowers' convictions are summarized in this Court's decision in his direct appeal as follows:

> On August 1, 1998, Alfred Smiley drove a car with two passengers in the area of 22nd and Lamotte Streets in Wilmington. At some point, Smiley became involved in an argument with several people on the street. A gunshot fired from the sidewalk next to the car struck Smiley in the chest. The car careened out of control on the street and came to rest against a utility pole. Wilmington police responded to the call and took Smiley to the hospital where he died from the gunshot wound.
>
> The State charged Damone Flowers with Smiley's murder and presented five witnesses at trial who were alleged to

---

[1] Super. Ct. Crim. R. 61(i)(5).

3

have been present at the scene of the shooting. Most of the incriminating evidence was presented through pretrial taped statements.

At Flowers' trial, the State admitted the pretrial taped statements of five witnesses pursuant to 11 *Del. C.* § 3507. A review of testimony of Vernon Mays, Matthew Chamblee, Ronetta Sudler, Tysheik McDougall, and Othello Predeoux reflects that none of the witnesses were asked by the State whether their pretrial taped statements were true.

### *Post-Conviction Motions*

On May 3, 2005, Flowers filed a *pro se* Motion for Post-Conviction Relief. The Superior Court dismissed the motion without prejudice and stated that Flowers may amend the motion. Instead, Flowers appealed to this Court and that appeal was dismissed as untimely.

On May 14, 2012, Flowers filed a second *pro se* Motion for Post-Conviction Relief. He subsequently obtained Rule 61 Counsel, and filed an amended and superseding Motion for Post-Conviction Relief. Flowers presented five claims of ineffective assistance of counsel: Claim One, that trial counsel failed to object to the admission of five videotaped statements admitted at trial pursuant to 11 *Del. C.* § 3507 based on the State's failure to lay the proper foundation; Claim Two, that trial counsel failed to object to three of the Section 3507 statements as cumulative; Claim Three, that trial counsel failed to object to the Section 3507 videotaped statements

4

going back to the jury during deliberations; Claim Four, that trial counsel failed to call four allegedly exculpatory witnesses; and Claim Five, that appellate counsel failed to raise the underlying claims on direct appeal.

## Commissioner's Report and Recommendation

The motion was referred to a Superior Court Commissioner in accordance with 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62.[2] The Commissioner issued the Report and Recommendation, stating that the defendant's Motion for Post-Conviction Relief should be granted. The Commissioner found that Claim One is not barred by Rule 61 because a constitutional violation occurred when the Section 3507 statements were admitted without proper foundation and it was appropriate for the Superior Court to consider it under the exception to procedural bars set forth in Rule 61(i)(5).

The Commissioner then addressed each of Flowers' claims under the *Strickland*[3] Standard. Under Claim One, the Commissioner found that trial counsel could have, and should have, objected to the incomplete foundation prior to the admission of the Section 3507 statements. Thus, the Commissioner concluded that had the statements not been presented at trial, there is a reasonable probability that the outcome would have been different and Flowers should be granted relief on this

---

[2] *Id.* 62(a)(5)(ii).
[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

claim. The Commissioner found that Claims Two, Three and Four were all without merit and found that Claim Five did not need to be addressed in light of the ruling as to Flowers' First Claim.

### *Superior Court Granted Post-Conviction Relief*

After reviewing the Commissioner's Report and Recommendation, as well as the State's objection and Flowers' response, the Superior Court issued a decision adopting in part and denying in part the Commissioner's Report and Recommendation. The Superior Court adopted in part the Commissioner's recommendation to dismiss Claims Two, Three, and Four, and granted Defendant's Motion of Post-Conviction Relief on Claims One and Five. Only Claims One and Five are at issue in this appeal.

The Superior Court's reasoning on Claim One was that although Flowers' trial counsel had made a reasonable decision not to object to the admission of the Section 3507 statements for failure of the State to ask the witnesses about the truthfulness of their statements,[4] and thus had not violated *Strickland*,[5] the same lawyer had, as appellate counsel, breached his duties under *Strickland* by failing to argue that the Superior Court had committed plain error by not itself acting to interpose the objection he had strategically chosen not to assert.[6] Based on that logic, the Superior

---

[4] *State v. Damone Flowers*, 2015 WL 7890623, at *5 (Del. Super. Ct. Nov. 20, 2015).
[5] *Id.*
[6] *Id.*

6

Court held that there was prejudice because on appeal there was no basis to cure the failure to ask the foundational question, and that this Court's precedent had read Section 3507 as requiring that witnesses be asked about the truthfulness of their statements before admission.[7]

The Superior Court then held that this *Strickland* violation gave rise to a denial of Flowers' Sixth Amendment right to confrontation, stating "Trial Counsel's failure to object to the improper foundation for admission of the five section 3507 statements resulted in a violation of Defendant's Sixth Amendment right to confrontation."[8] The Superior Court also granted Claim Five on the basis of "Counsel's failure to raise the same issue on direct appeal, which constituted ineffective assistance of counsel."[9]

As a preliminary matter, we note that the Superior Court did not consider that a claim of ineffective assistance of trial counsel cannot be raised in a direct appeal.[10]

### Section 3507 Foundational Requirements

In *Woodlin*, this Court noted that there are certain threshold requirements to admissibility that must be met before a Section 3507 statement can be heard by the jury:

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Sahin v. State*, 7 A.3d 450 (Del. 2010).

7

A statement offered under Section 3507 must be offered before the conclusion of the direct examination of the declarant. The prosecutor must inquire about the voluntariness of the statement during the direct examination of the declarant, and the judge must make a ruling on whether the declarant made the statement voluntarily before the statement may be submitted to the jury for consideration.[11]

In *Woodlin*,[12] this Court also set forth a comprehensive review and analysis of the Section 3507 foundational requirements that must be established by the State during the direct examination of a witness, as a condition precedent to admissibility of the witness' prior statement.[13] Those foundational requirements were summarized by this Court more than twenty-five years ago in *Ray v. State*:

> "In order to offer the out-of-court statement of a witness, the statute requires the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out-of-court statement itself." Thus, a witness' statement may be introduced only if the two-part foundation is first established: the witness testifies about both the events and whether or not they are true.[14]

In this case, the Superior Court did not recognize the distinction between the right of a defendant's attorney to insist that the State established both foundational

---

[11] *Woodlin v. State*, 3 A.3d 1084, 1087 (Del. 2010). See also *Starling v. State*, 130 A.3d 316, 228 (Del. 2015). In this case, Flowers' trial counsel objected to the admission of Ronetta Sudler's out-of-court statements on voluntariness grounds, but that objection was overruled.
[12] *Woodlin v. State*, 3 A.3d 1084 (Del. 2010).
[13] *Id.* at 1087-88.
[14] *Ray v. State*, 587 A.2d 439, 443 (Del. 1991), quoting *Keys v. State*, 337 A.2d 18, 20 n.1 (Del. 1975)).

requirements prior to the admission of a Section 3507 statement into evidence and the right of a defendant's attorney to make a professional judgment not to object if the second foundation requirement is not established by the State.

The first situation was addressed by this Court in *Blake*.[15] In that case, the State did not establish the second foundational requirement and the defendant objected to the admission of the Section 3507 statement.[16] The Superior Court overruled the objection on the basis that establishing the second foundational requirement was unnecessary because the statement would be admitted into evidence no matter how the question was answered.[17] We summarized the trial judge's ruling in Blake's case as follows:

> After the State finished its direct examination on *voir dire*, Blake argued that the State, under *Ray* and *Acosta [v. State]*,[18] was required to ask Land whether her statement was truthful. The Superior Court, recognizing that the statement could be played for the jury whether Land said that her prior statements were truthful or not, ruled that the statement could be played for the jury without such an inquiry.[19]

In *Blake*, although the Superior Court correctly stated that the Section 3507 statement would be admissible irrespective of the answer, this Court reversed and

---

[15] *Blake v. State*, 3 A.3d 1077 (Del. 2010).
[16] *Id.* at 1081.
[17] *Id.* at 1082.
[18] *Acosta v. State*, 417 A.2d 373 (Del. 1980).
[19] *Blake*, 3 A.3d at 1082.

held that, upon request of the defendant's attorney, the State must establish both foundational requirements.[20]

In doing so, we reviewed the rationale for the second foundational inquiry: truthfulness. We noted that, in *Johnson*,[21] we held that the jury or trier of fact must assess the declarant's credibility on the witness stand "in the light of all the circumstances presented, including any claim by the witness denying the prior statement, or denying memory of the prior statement or operating events, or changing his [or her] report of the facts."[22] Our decision in *Moore*[23] explained, "[u]nder § 3507, there is no requirement that the witness either affirm the truthfulness of the out-of-court statement, or offer consistent trial testimony."[24]

The second situation (no defense objection) was presented in Flowers' case. During direct examination, the State failed to ask the witnesses whether their prior statements were truthful and therefore, failed to establish the second Section 3507 foundational requirement. Nevertheless, Flowers' trial attorney made a professional judgment that he would not object to its absence. Instead, he decided to challenge the credibility of each witness by cross-examining them about their pretrial recorded statements, which he had already carefully reviewed. The record reflects that trial

---

[20] *Id.*
[21] *Johnson v. State*, 338 A.2d 124 (Del. 1975).
[22] *Blake*, 3 A.3d at 1082-83 (quoting *Johnson*, 338 A.2d at 128).
[23] *Moore v. State*, 655 A.2d 308, 1995 WL 67104 (Del. Feb. 17, 1995) (TABLE).
[24] *Id.* at *2.

counsel filed an affidavit responding to Flowers' claims of ineffective assistance of counsel and explained that:

> Counsel felt at the time that the **other** foundational requirements for the admissibility of the statements had been met and counsel was intent on effectively cross-examining the witnesses. Some of the witnesses either did not remember speaking to the police officer or, in fact, refused to even acknowledge the statements. For example, if the witness was asked if the statement was true, in all likelihood the answer would have been that the witness did not even remember making it. To cure the deficiency and the interposing of such an objection could have potentially undermined counsel's credibility with the jury. Counsel did not expect that the presiding Judge was going to keep these statements out of evidence on that basis.[25]

Counsel's explanation for not objecting was professionally reasonable. "When a defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney."[26] "Specifically, the defense attorney 'has the immediate and ultimate responsibility of deciding if and *when to object*, which witnesses, if any, to call, and what defenses to develop.'"[27] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[28]

---

[25] App. to State's Opening Br. at A108-09 (emphasis added).
[26] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009).
[27] *Id.* at 840-41 (emphasis added) (quoting *Wainwright v. Sykes*, 433 U.S 72, 93 (1977)).
[28] *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 596 (1993).

11

The record reflects trial counsel addressed the out-of-court statements of the witnesses in his opening statement at trial, and pointed to inconsistencies the jury would hear both within and between certain statements. On cross-examination, trial counsel was able to obtain concessions that some of the statements contained inaccuracies and that other information could have been inaccurate. The record reflects that trial counsel effectively used the prior statements to attack the credibility of all five witnesses at trial.[29]

### *Ineffective Assistance of Counsel*

At the time of Flowers' second Motion for Post-Conviction Relief, the bars to relief in Rule 61(i)(1)-(3) did not apply "to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity[,] or fairness of the proceedings leading to the judgment of conviction."[30] A meritorious ineffective assistance of counsel claim that demonstrates a constitutional violation may be considered an exception under

---

[29]Counsel used the inconsistencies and memory problems to cast doubt on the witnesses' credibility and the accuracy of their prior statements. For example, as Superior Court noted, Matthew Chamblee identified Flowers as the shooter at trial: "And could you see the person holding the gun? A. Yes.". App. to State's Opening Br. at A52. Using his prior statement, trial counsel was able to have Chamblee admit that he could not really see the shooter and could not be sure of his identification: "You specifically say I didn't see his face. Do you remember saying that? A. No.". Trial counsel replayed portions of Chamblee's statement as he cross-examined him.

[30] Super. Ct. Crim. R. 61(i)(5).

Rule 61(i)(5). Flowers "has the burden of proof and must show that he has been deprived of a substantial constitutional right before he is entitled to any relief."[31]

To prevail on a claim of ineffective assistance of counsel, the defendant must meet the two-prong *Strickland* test by showing that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense."[32] There is a strong presumption that trial counsel's conduct constitutes sound trial strategy.[33] In evaluating an attorney's performance, a reviewing court should "eliminate the distorting effects of hindsight," "reconstruct the circumstances of counsel's challenged conduct," and "evaluate the conduct from counsel's perspective at the time."[34]

Had Flowers' trial counsel objected to the admission of the prior statements on the basis that the State had failed to ask the witnesses whether their statements were truthful, the trial judge would simply have directed the State to ask the question. Under the circumstances of Flowers' case, trial counsel's failure to object to the absence of a foundational question that would not have prevented the admission of the statements into evidence was objectively reasonable. Flowers has not

---

[31] *Younger v. State*, 580 A.2d 552, 555 (Del. 1990) (citing *People v. Gaines*, 473 N.E.2d 868, 877 (Ill. 1984)).
[32] *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).
[33] *Id.* at 689.
[34] *Id.*

13

demonstrated a reasonable probability that an objection would have changed the outcome of his trial.

In rejecting a similar claim of ineffective assistance of counsel for failure to object when the second foundational requirement was not established by the State, this Court stated:

> Although trial counsel failed to object to the prosecutor's perhaps awkward attempt to comply with his obligation under § 3507, trial counsel may well have recognized that a technical objection was unlikely to help his client. Hoskins argues that his trial counsel should have objected because the prosecutor's questions were not precise enough, and did not focus on whether West's prior testimony was truthful, not just when given, but whether it remained truthful. Had his trial counsel objected to the prosecutor's awkward but harmless form of questioning on this basis, as Hoskins claims he should have done, West would presumably have affirmed that his prior statements were still truthful, both because he took an oath to tell the truth before he testified at trial, and because his current testimony was consistent with his prior testimony. Thus, Hoskins has not shown that trial counsel's failure to object constituted a *Strickland* violation at all, and, in any event, has not demonstrated prejudice. And absent any prejudice to the defendant, we will not reverse as an abuse of discretion a trial court's decision to admit evidence based upon the technical requirements of § 3507. In sum, there are insufficient grounds in the record to overcome the presumption of trial counsel's reasonableness.[35]

Flowers' trial counsel acted well within the bounds of objectively reasonable representation in deciding not to raise a challenge to the admission of the statements

---

[35] *Hoskins v. State*, 102 A.3d 724, 734-35 (Del. 2014).

based on a failure of the prosecutors to ask a single question where the answer did not affect the admissibility of the witness' prior statement or the ability of counsel to effectively cross-examine the witnesses on both their trial testimony and their out-of-court statement. If trial counsel for a defendant makes a reasonable decision not to make a foundational objection to a witness statement under Section 3507, the failure cannot then be considered a violation of the defendant's right to confrontation, much less when the defendant's counsel vigorously confronted the witness on cross-examination on all material issues covered by that statement. Flowers failed to establish the first prong of *Strickland*.

### *Conclusion*

Flowers' claim was untimely under Rule 61(i)(1) and repetitive under Rule 61(i)(2). Flowers has not demonstrated that the Superior Court was required to consider his claim under Rule 61(i)(5) to avoid these procedural bars to his claim. The judgment of the Superior Court is reversed.[36]

---

[36] We note Justice Vaughn's well-stated concurrence. Because we believe this case can be decided without addressing the important issue the concurrence discusses, which arguably requires us to reexamine and perhaps reverse precedent, we rest our decision on grounds that involves the straight-forward application of existing law.

**VAUGHN**, Justice, concurring:

In order to avoid the time-bar of Superior Court Rule 61(i)(1), Mr. Flowers must proceed under Rule 61(i)(5) by showing that he has a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[1]   In other words, he must begin by showing there was a constitutional violation.   The Superior Court found there was a violation of Mr. Flowers' Sixth Amendment right to confront witnesses against him.   Specifically, the Superior Court found that Mr. Flowers' right to confront witnesses was violated because the State did not ask the witnesses on direct examination, prior to admission of their § 3507 statements,[2] whether the prior, out-of-court statements were true or not.   In reaching its conclusion, the Superior Court relied upon and followed this Court's decisions in *Ray v. State*[3] and *Blake v. State*.[4]

In *Ray* this Court first established the requirement that the witness must be asked on direct examination whether the prior, out-of- court statement is true before the statement can be introduced under § 3507.[5]   Specifically, the Court said:

---

[1] Del. Super. Ct. R 61(i)(5).
[2] 11 *Del. C.* § 3507.
[3] 587 A.2d 439 (Del. 1991).
[4] 3 A.3d 1077 (Del. 2010).
[5] 587 A.2d at 443.

16

Thus, a witness' statement may be introduced only if the two-part foundation is first established: the witness testifies about both the events and whether or not they are true.[6]

The requirement that the State ask on direct examination whether the prior, out-of-court statement is true was restated and elevated to Sixth Amendment status in *Blake*, as illustrated by the following passages from that decision:

> After *Ray* and *Moore* were decided, there was no reason for confusion, because our holding in *Moore* was completely consistent with *Ray*, where we construed *Johnson v. State* as standing for the proposition that the witness must testify about whether or not the prior statement was true.
>
> .    .    .
>
> The Sixth Amendment requires an entirely proper foundation, if the prior statement of a witness is to be admitted under section 3507 as independent substantive evidence against an accused. This Court has consistently and unequivocally held "a witness' statement may be introduced **only** if the two-part foundation is first established: the witness testifies about **both** the events *and whether or not they are true.* Accordingly, in *Ray* we held that "in order to conform to the Sixth Amendment's guarantee of an accused's right to confront witnesses against him, the [witness] must also be subject to cross-examination on the content of the statement as well *as its truthfulness.*[7]

It is of course true that the witness must be subject to cross-examination on the content of the statement as well as its truthfulness. But I find nothing in the text of § 3507 or the Sixth Amendment that requires the state to ask the witness on direct

---

[6] *Id.*

[7] 3 A.3d at 1082-83 (emphasis in original).

17

examination, as a foundational question, whether the prior, out-of-court is true or not.

> § 3507 provides, in pertinent part:

>> (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

>> (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.[8]

This Court first discussed the foundational requirements of § 3507 in *Keys v. State*,[9] decided sixteen years before *Ray*.[10] In *Keys*, the Court stated, in pertinent part:

>> We conclude that, in order to use the out-of-court statements of Wells, in the situation presented by this case, the legislative language required the production and direct examination of the witness Wells by the prosecution. We do not mean to suggest any precise form of direct examination except that it should touch both on the events perceived and the out-of-court statement itself.[11]

I agree with this analysis from *Keys*. The state must call the witness and conduct a direct examination which touches on the events perceived and the out-of-

---

[8] 11 *Del. C.* §§ 3507(a)-(b).
[9] 337 A.2d 18 (Del. 1975).
[10] 587 A.2d at 443.
[11] 337 A.2d at 23.

18

court statement. But the direct examination does not need to be conducted in any precise form and there is no single question which precisely must be asked. If the State wishes to ask the witness whether the statement is true or not, it is free to do so. If the defense wishes to ask the witness whether the statement is true or not, it is free to do so. As I read the statute, neither side is required to do so.

The United States Supreme Court has stated that "the Confrontation Clause imposes a burden on the prosecution to present its witnesses."[12] In addition, the Clause "has long been read as securing an adequate opportunity to cross-examine adverse witnesses."[13] The Court has further stated that "when a hearsay declarant is present at trial and subject to unrestricted cross-examination . . . the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements" of the Confrontation Clause.[14] In this case, the State called its witnesses, who testified under oath, and the defendant had a full and fair opportunity to cross-examine each. In my opinion, the Sixth Amendment was satisfied.

At oral argument, counsel for Mr. Flowers argued that the following passage from *California v. Green* supports a requirement that the State ask the witness on

---

[12] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).
[13] *U.S. v. Owens*, 484 U.S. 554, 557 (1988).
[14] *Id.* at 560.

19

direct examination whether the prior, out-of-court statement is true or not:

> Thus, as far as the oath is concerned, the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury; indeed, the very fact that the prior statement was not given under a similar circumstance may become the witness' explanation for its inaccuracy - an explanation a jury may be expected to understand and take into account in deciding which, if either, of the statements represents the truth.[15]

I read this passage as simply meaning that the witness at trial, under oath, can be confronted with the prior, out-of-court statement. Whether that confrontation occurs during the State's direct examination or the defendant's cross-examination is, I think, without Sixth Amendment significance.

Since the State called its witnesses at trial and the defense had a full, unrestricted opportunity to cross-examine them, my conclusion is that no Sixth Amendment violation occurred. I would reverse the judgment of the Superior Court on the ground that Mr. Flowers has failed to show a constitutional violation for the reasons set forth in this concurrence.

---

[15] 399 U.S. 149, 158-59 (1970).

20