# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          )
                            )
    v.                      )          **Crim. ID No. 1312014951**
                            )          **Cr. A. Nos. 14-01-1239, etc.**
JEROME MADISON             )

Submitted: May 12, 2022
Decided: July 29, 2022

## ORDER

*Upon Defendant Jerome Madison's*
*Amended Second Motion for Postconviction Relief*,
**DENIED**.

This is Defendant Jerome Madison's Second Motion for Postconviction Relief. Mr. Madison, who is serving a long period of mandatory incarceration for rape, assault and related charges, asks the Court to vacate its judgment of conviction and grant him a new trial based on post-trial DNA test results.

## FACTUAL[1] AND PROCEDURAL BACKGROUND

(1)    In December 2013, Mr. Madison was arrested by the New Castle County police for intruding into his ex-girlfriend's home and attacking her and a

---

[1]    A more detailed account of Mr. Madison's crimes is set forth in the Delaware Supreme Court's direct appeal decision and this Court's denial of his first motion for postconviction relief. *Madison v. State*, 2016 WL 363734, at *1 (Del. Jan. 28, 2016) (*Madison I*) ; *State v. Madison*, 2018 WL 1935966, at *1 (Del. Super. Ct. Apr. 11, 2018) (*Madison II*), *aff'd*, 2018 WL 6528488 (Del. Dec. 11, 2018). Here, the Court recounts only the specific factual and procedural background necessary to resolve this motion.

-1-

male acquaintance.  Mr. Madison gave a post-*Miranda* statement confessing that he unlawfully entered the home when he saw that another man was inside.[2] Mr. Madison admitted that upon seeing his former girlfriend being intimate with someone else, he physically assaulted both of them; he denied though that he sexually assaulted either.[3]

(2)	Mr. Madison was thereafter indicted for multiple offenses including first-degree rape, first-degree kidnapping, second-degree assault, home invasion, a weapons offense, and terroristic threatening.[4]

(3)	His bench trial occurred in September 2014.  The victims testified that, in addition to violently assaulting them, Mr. Madison forced them to perform oral sex on each other (though testimony conflicted as to whether one of the victims actually complied or only pretended to do so).[5]  Mr. Madison also threatened future harm to them and their families if they contacted the police.[6]  Despite these threats, the victims called the police and gave statements at the hospital while being treated for the injuries Mr. Madison had inflicted.[7]

---

[2]	*Madison I*, 2016 WL 363734, at *1.

[3]	*Id*.

[4]	Indictment, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Jan. 21, 2014) (D.I. 2).

[5]	*Madison I*, 2016 WL 363734, at *1.

[6]	*Id.*

[7]	*Id.*

(4)     At the conclusion of his non-jury trial, the Court found Mr. Madison guilty of the following:  one count each of—first-degree rape, attempted first-degree rape, first-degree unlawful sexual contact, home invasion, possession of a deadly weapon during the commission of a felony, second-degree assault, and third-degree assault; and two counts each of—kidnapping first degree and terroristic threatening.[8] He was later sentenced to serve an aggregate 42-year term of incarceration.[9]

(5)     The Delaware Supreme Court affirmed this Court's verdict, sentence, and denial of post-trial relief.[10]     With the assistance of appointed counsel, Mr. Madison litigated his first postconviction motion four years ago.  The motion was ultimately unsuccessful.[11]  And our Supreme Court affirmed that denial.[12]

(6)     Mr. Madison, then *pro se*, filed a second motion for postconviction relief.  He was eventually re-joined by counsel from his first postconviction round, who filed the now-pending Amended Second Motion for Postconviction Relief.[13]

---

[8]     Verdict, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Oct. 1, 2014) (D.I. 42); DEL. CODE ANN. tit. 11, §§ 773 and 531 (2013) (first-degree rape and attempted first-degree rape are class A felonies); *id*. at § 783A (first-degree kidnapping is a class B felony); *id*. at § 826A (home invasion is a class B felony); and *id*. at § 1447 (possession of a deadly weapon during the commission of a felony is a class B felony).

[9]     Sentencing Order, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Mar. 13, 2015) (D.I. 57).

[10]     *Madison I*, 2016 WL 363734, at *4.

[11]     *Madison II,* 2018 WL 1935966.

[12]     *Madison v. State*, 2018 WL 6528488 (Del. Dec. 11, 2018).

[13]     Def.'s Am. Second Mot. for PCR Relief, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Feb. 22, 2021) (D.I. 146) (Hereafter "Def.'s Am. Second PCR Mot."); *see also* Def.'s

Trial counsel and the State timely filed their respective submissions and responses.[14]

(7)     Given the unusual factual and procedural history that brought about the DNA testing results upon which Mr. Madison and his counsel base the present motion, the Court ordered some expansion of the record.[15]  Of particular import to the Court was gaining clarity on Mr. Madison's position on the procedural bar to a successive postconviction motion based on inconclusive, post-trial DNA results— particularly when trial counsel strategically declined to have DNA testing performed prior to trial and the Court had already denied postconviction relief on this claim.[16]

## MR. MADISON'S CURRENT POSTCONVICTION CLAIM

(8)     Relying on post-trial DNA testing results, Mr. Madison contends that his present postconviction relief claim is *not* "on the basis of newly discovered evidence" under Delaware Superior Court Criminal Rule 61(d)(2)(i); but rather, one of ineffective assistance of trial counsel, "with the newly discovered evidence demonstrating the ensuing *Strickland* prejudice."[17]  He asks the Court to grant him

---

Reply to State's Resp. to Am. Second Mot. for PCR, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Feb. 25, 2022) (D.I. 152).

[14]   Affidavit of James A. Natalie, Jr., Esq., *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Aug. 26, 2021) (D.I. 150) (Hereafter "Natalie Aff."); State's Resp. to Am. Second Mot. for PCR, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Dec. 20, 2021) (D.I. 151).

[15]   *See* D.I. 149; *see also* Postconviction Arg. Tr. at 2-3, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. May 12, 2022) (D.I. 158).

[16]   Postconviction Arg. Tr. at 4-5, 16.

[17]   Def.'s Reply to State's Resp. to Am. Second Mot. for PCR at 2, *State v. Jerome Madison*, ID No. 1312014951 (Del. Super. Ct. Feb. 25, 2022) (D.I. 152); *see also* Postconviction Arg. Tr. at 9.

a new trial because, to him, the recently-generated DNA results "create[] a strong inference that [he] is actually innocent in fact of the acts underlying the charges of which he was convicted[.]"[18]  Mr. Madison's attempt to carefully navigate the obvious Rule 61 hazards, simply does not get him to ground on which his recycled complaint of ineffective assistance might stand.

## APPLICATION OF RULE 61's PROCEDURAL BARS

(9)    Before the Court can consider the substance of any postconviction claim, it must first address Criminal Rule 61's procedural requirements.[19]  The procedural bars in Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[20]  If any of these apply, then the movant must show entitlement to relief under Rule 61(i)(5).[21]

(10)   This postconviction motion—Mr. Madison's second—is both untimely and repetitive.  So it is barred by Rules 61(i)(1) and (2).  Mr. Madison also seeks to revisit an ineffective assistance of counsel (IAC) claim that has been considered before and refused.  So Rule 61(i)(4)'s bar of formerly adjudicated claims also

---

[18]  Def.'s Am. Second PCR Mot. at 6 (quoting Del. Super. Ct. Crim. R. 61(d)(2)(i)).

[19]  *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[20]  *State v. Marc Taylor*, 2017 WL 5054262, at *2 (Del. Super. Ct. Oct. 23, 2017).

[21]  *Id.*

precludes his lone prayer for relief here.[22]

(11) In his first postconviction proceeding, this Court rejected Mr. Madison's IAC claim that alleged trial counsel's failure to have certain items tested for trace blood and to develop DNA evidence prejudiced the outcome of his trial.[23] Trial counsel made a strategic decision when he chose not to seek such testing and that was a decision no court would be willing to disturb.[24] Accordingly, Mr. Madison is not entitled to a re-examination of his earlier postconviction complaint "simply because the claim is refined or restated."[25]

---

[22] Super. Ct. Crim. R. 61(i)(4) (barring "any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, *in a postconviction proceeding*, or in a federal habeas corpus proceeding") (emphasis added).

[23] *See State v. Madison*, 2018 WL 1935966, at *8 (Del. Super. Ct. Apr. 11, 2018) ("Madison again fails to show that Mr. Natalie's decision [not to pursue trace blood or DNA testing] prejudiced the outcome of his trial. In Madison's case, much like that of *Jackson* and *Staats*, the potential evidence from the DNA and blood would not have overcome the overwhelming weight of evidence presented at trial as to the issue of consent on the rape charges. This evidence includes Madison's own admissions, victim testimony, and the medical evidence. Madison fails to establish either that [counsel's] decision was deficient or that he was prejudiced by that decision.").

[24] *Id. See e.g. Drumgo v. State*, 2012 WL 1377596, at *2 (Del. Apr. 17, 2012) (trial counsel's strategic decision to forego DNA testing to protect client from possibly incriminating results and also provide the defense with an argument of insufficient evidence based on the prosecutor's failure to produce the test results was reasonable); *Walker v. State*, 2007 WL 2744920, *2 (Del. Sept. 20, 2007) (trial counsel was reasonable when deciding DNA testing on a hair recovered from the victim would do little or nothing to contradict the testimony establishing the rape); *see also State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002) ("[I]t is not this Court's function to second-guess reasonable trial tactics."); *State v. Flowers*, 150 A.3d 276, 282 (Del. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)) (In evaluating an attorney's performance, a reviewing court should "'eliminate the distorting effects of hindsight,' 'reconstruct the circumstances of counsel's challenged conduct,' and 'evaluate the conduct from counsel's perspective at the time.'").

[25] *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992).

(12) Now Criminal Rule 61(i)(5) does permit litigation of a claim otherwise procedurally barred under (i)(1), (2), or (4), but only if that claim satisfies the pleading requirements of Rule 61(d)(2)(i) or (d)(2)(ii).[26]

(13) Alluded to by Mr. Madison here, subsection (d)(2)(i) requires a movant to plead with particularity that "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted."[27]

## MR. MADISON'S RECONSTITUTED POSTCONVICTION CLAIM IS NOT EXCEPTED UNDER RULES (d)(2)(i) or (i)(5)

(14) Under Rule 61(d)(2)(i), Mr. Madison shoulders a heavy burden in establishing that the existence of "new evidence" creates a strong inference of his actual innocence.[28] The Delaware Supreme Court gave weight to the "actual innocence" standard recently in *Purnell v. State*.[29] Indeed, *Purnell* was "the first case where a defendant [] satisfied the actual innocence exception to the procedural bars in Rule 61."[30]

---

[26] *See State v. Chattin*, 2022 WL 2251248, at *2 (Del. Super. Ct. June 22, 2022) (quoting Super. Ct. Crim. R. 61(i)(5)).

[27] Super. Ct. Crim. R. 61(d)(2).

[28] *Purnell v. State*, 254 A.3d 1053, 1100 (Del. 2021) ("Satisfying the actual innocence test is, by design, a heavy burden, and such meritorious claims are exceedingly rare.").

[29] *Id.* at 1095 (citing *State v. Milton Taylor*, 2018 WL 3199537, at *7 (Del. Super. Ct. June 28, 2018), *aff'd*, 2019 WL 990718 (Del. Feb. 27, 2019)).

[30] *Id.* at 1122.

-7-

(15) Of import here, a movant cannot successfully navigate the "actual innocence" standard with evidence that is "merely cumulative or impeaching."[31] Thus, any new evidence "that goes *only* to the weight or credibility of that which was presented to the [factfinder] is almost never adequate to meet the demanding bar for being granted a new trial."[32]

## A. THE DNA EVIDENCE IS NOT "NEW".

(16) In *Purnell*, our high court adapted the "new evidence standard" Delaware courts have traditionally followed in the *Lloyd*[33] and *Downes*[34] line of cases.[35] Those cases manifest a well-developed body of Delaware law that addresses actual innocence claims based on new evidence and requires that such evidence must be "*discovered since the trial and could not have been discovered before by the exercise of due diligence*."[36]

(17) Mr. Madison holds up certain post-trial DNA test results as the "new evidence" establishing his actual innocence. He only now possesses this evidence

---

[31] *Id.*

[32] *Id.*

[33] *Lloyd v. State*, 534 A.2d 1262 (Del. 1987).

[34] *Downes v. State*, 771 A.2d 289 (Del. 2001).

[35] *Purnell*, 254 A.2d at 1095-1100 ("[W]e prefer to rely on our test as set forth in *Downes* and *Lloyd*. Nevertheless, we continue to find the reasoning of the federal cases applying *Schlup* useful and persuasive guidance in examining Rule 61 actual innocence claims.").

[36] *Id.* at 1097, 1100 (emphasis added).

because of Delaware's statewide Sexual Assault Kit Initiative, a program that "sought to clear a backlog of previously untested [rape] kits."[37] Through that program, the rape kit associated with this case was tested in October 2017—two years after Mr. Madison's trial and during the pendency of his first postconviction motion.[38]

(18) Fatal to Mr. Madison's current effort, however, is the fact that the possibility of testing for trace DNA evidence was known to him and his counsel well before his trial.[39] So, in *Purnell* terms, the DNA evidence he proffers is not "new."

(19) Simply because Mr. Madison now has DNA test results—results that don't appear to be any more- or less-favorable to him than no results at all—doesn't make it "new." No, the possibility of testing for trace DNA was available pre-trial and his trial counsel made the tactical decision to forgo such testing because, at best, it would have been "superfluous or irrelevant," at worse, "potentially prejudicial."[40] The since-developed trace DNA results demonstrate trial counsel's prescience rather than any possible ineffectiveness.

---

[37] *See* State's Resp. to Am. Second Mot. for PCR at 15.

[38] Def.'s Am. Second PCR Mot., Appendix at A208 (Hereafter "Def.'s App.").

[39] *Madison*, 2016 WL 363734, at *3 (rejecting Mr. Madison's direct appeal claim that the State suppressed exculpatory DNA evidence—"In its March 19, 2014 Superior Court Criminal Rule 16 disclosures, the State indicated that DNA was pending. At trial, Detective DiSabatino testified that no DNA testing was performed. The State confirmed in its closing arguments that no evidence was sent for DNA testing.").

[40] *See* Natalie Aff. at 1.

**B. THE MOSTLY INCONCLUSIVE TRACE DNA RESULTS LEND WEAK VOICE TO MR. MADISON'S PROTESTATION OF ACTUAL INNOCENCE.**

(20)  Mr. Madison posits that when the 2017 DNA testing results are considered together with the victims' testimony, it supports a conclusion that the sex crimes he was convicted of never occurred.[41]  If the victims are to be believed, says he, conclusive DNA evidence supporting their testimony must exist, *e.g.*, blood would be present on the oral swabs[42] or some DNA transfer found between the two victims.  But the results are inconclusive at best and a far cry from evidence establishing Mr. Madison's actual innocence.

(21)  Known blood samples and several latent evidence swabs were obtained from the two victims when the underlying offenses occurred in 2013.  Consistent with Delaware's statewide rape kit testing initiative, those collected samples were processed for possible DNA in October of 2017 to be added to a more generalized investigative database.[43]  The 2017 Report indicates each sample was specifically

---

[41]  *See* Postconviction Arg. Tr. at 14 ("I think some of this is the weight of impeachment information dependent upon the forensic evidence that we can demonstrate. In this case, for example, there is testimony of alleged oral sex that was performed.  There is no testimony of anyone washing off or doing anything that would cleanse any body parts of DNA, so there is no reason to believe that there would not be the presence of DNA if these actions as alleged by the victims actually occurred.  So I think this is one of those categories in which the impeachment value is even higher because of the way that the testimony unfolded at trial.").

[42]  Def.'s Reply to State's Resp. to Am. Second Mot. for PCR at 17-18.

[43]  Def.'s App. at A208.

tested "to identify samples containing male specific DNA."[44]  As to potential DNA, the testing yielded the following results:[45]

|  | DNA Samples | Male DNA Detected (Y/N) | Screening Conclusions/Comments |
|---|---|---|---|
| **A.T.** | | | |
|  | Vaginal swabs | Y | "[D]ue to the presence of high levels of total human DNA compared to male DNA, this sample was not processed for STR analysis." |
|  | Mouth & Chin | N/A | Inconclusive for presence of male DNA |
|  | Oral Swabs | N | |
| **E.C.** | | | |
|  | Penile Swab | Y | DNA profile is consistent with E.C.'s DNA profile.<br><br>"One additional allele was obtained . . . due to the limited data obtained, no conclusions can be made on this allele." |
|  | Chest Swab | Y | DNA profile "is consistent with a mixture of three or more individuals including at least one male contributor . . . no conclusions can be made." |
|  | Debris Collection, Face and Lips | Y | DNA profile is consistent with E.C.'s DNA profile. |

(22)  Though he still stands by his trial testimony that he physically assaulted the victims, Mr. Madison maintains that he neither forced the oral copulation nor

---

[44]  *Id.*

[45]  *Id.* at A208-A209.

fondled the female victim.[46] He insists the limited 2017 DNA test results support his long-claimed innocence of the sex charges because it "reveals that the mouth and chin swabs of AT were inconclusive for the presence of male DNA" thereby discrediting the victims' testimony.[47] Mr. Madison's theory is that the inconclusive results exonerate him of the sex crimes and prove the victims fabricated the sexual assault. In his view, anything less than absolute positive findings that the victims transferred DNA proves him innocent. This view defies both logic and science. And other courts have rejected just such postconviction claims based on post-trial DNA evidence testing.[48]

(23)    For instance, like Mr. Madison, a Nebraska defendant was convicted of first degree sexual assault and obtained post-trial DNA test results revealing only the

---

[46]   *Id.*

[47]   Def.'s Am. Second PCR Mot. at 17-22; *see also* Postconviction Arg. Tr. at 5.

[48]   *See*, *e.g.*, *State v. Gonzalez*, 2021 WL 5313073 (Neb. Ct. App. Nov. 16, 2021); *State v. Jenkins*, 393 P.3d 1184, 1187-88 (Or. Ct. App. 2017) (denying post-trial DNA testing because initial testing already indicated DNA presence of two other unknown individuals, so a retest indicating DNA of other individuals would be duplicative of evidence available during defendant's trial, and further testing wouldn't establish defendant's actual innocence in light of the overall case against him); *State v. Romero*, 360 P.3d 1275 (Or. Ct. App. 2015) (denying postconviction relief where defendant argued that the DNA evidence, assuming exculpatory results, would "undermine" the state's theory by either revealing that none of the DNA belonged to him or the victim, or by revealing the DNA of the true perpetrator); *Bates v. State*, 3 So. 3d 1091 (Fla. 2009) (denying post-trial DNA testing because such testing would neither exonerate nor mitigate defendant's sentence in light of the trial testimony, defendant's own statements and admissions, and the physical evidence seized from him during his arrest at the crime scene); *but cf. People v. Shum*, 797 N.E.2d 609, 619-21 (Ill. 2003) (finding post-trial DNA testing was warranted given the "unusual facts of this 20-year-old case," where identity was a central issue and favorable DNA testing would significantly advance defendant's claim of actual innocence).

presence of the victim's DNA and "some indication of male DNA on one sample."[49] That defendant's lone claim for relief was that the lack of DNA evidence tying him to the victim's bedspread either exonerated him entirely of the underlying rape charges, or was "exculpatory enough" to warrant a new trial.[50]

(24) That Nebraska courts disagreed, reasoning that no DNA evidence linking the defendant to the crime scene was presented at his trial; so, these results neither revealed anything new, nor was the lack of DNA evidence at trial material to the issue of his guilt.[51] "DNA evidence is not a videotape of a crime, and the nonpresence of an individual's DNA profile in a biological sample does not preclude that individual from having been present or in possession of the item tested."[52] Thus, the courts rejected the defendant's contention that the DNA results were exonerative because the lack of one's DNA on an item of evidence "is at best inconclusive, especially when there is other credible evidence tying the defendant to the crime."[53]

(25) Same here. The lack of a positive finding of one victim's DNA on the person of the other is of *de minimis* value given the fully developed body of evidence

---

[49] *Gonzalez*, 2021 WL 5313073, at *4.

[50] *Id.*

[51] *Id.*

[52] *Id.* at *5 (citing *State v. Myers*, 937 N.W.2d 181 (Neb. 2020), *cert. denied* 141 S. Ct. 287 (2020)).

[53] *Id.* (citing *State v. Amaya*, 938 N.W.2d 346, 354 (Neb. 2020)).

in this case.

(26)   Consequently, Mr. Madison's claim of actual innocence here fares no better under our *Purnell* actual-innocence standard.[54]   No DNA evidence either supporting Mr. Madison's claims of innocence or the victims' claims of sexual assault was presented at trial.  His guilty verdict rested on other credible evidence that proved his crimes, *inter alia*, his own admissions and trial testimony, the victims' testimony, and the medical evidence.

(27)   Mr. Madison indulges the "CSI effect" in his thought and filings—if the police couldn't develop scientific evidence to support the victims, then what they recounted must not have happened.[55]   But in reality, the post-trial DNA results are neutral, add nothing new, and the lack of this evidence at his trial clearly was immaterial to his guilt.  The 2017 DNA results neither exonerate Mr. Madison nor suggest that the victims fabricated the sexual assault.  And in no real-world view can they be deemed to create the inference of innocence—let alone the *strong inference*—required under this Court's Rule 61(i)(5) exception to allow this second

---

[54]   *Purnell*, 254 A.2d at 1095.

[55]   "The 'CSI effect' is a term that legal authorities and the mass media have coined to describe a supposed influence that watching the television show *CSI: Crime Scene Investigation* has on juror behavior. Some have claimed that jurors who see the high-quality forensic evidence presented on CSI raise their standards in real trials, in which actual evidence is typically more flawed and uncertain." *United States v. Fields*, 483 F.3d 313, 355 n.39 (5th Cir. 2007) (quoting Tom R. Tyler, *Viewing CSI and the Threshold of Guilt: Managing Truth and Justice in Reality and Fiction,* 115 YALE L.J. 1050, 1050 (2006)).

postconviction motion for revisitation of the prior IAC disposition.[56]

### C. GIVEN ITS MOST GENEROUS INTERPRETATION, THE POST-TRIAL DNA EVIDENCE IS IMPEACHMENT MATERIAL.

(28) Recall that Mr. Madison suggests that the 2017 DNA testing results are somehow evidence that his counsel's tactical call to eschew pre-trial testing of the victim swabs was objectively unreasonable and prejudicial. Like attacks on informed trial strategy gain little ground in the best of circumstances.[57] But bringing such here by claiming that the 2017 results are some evidence of actual innocence warranting a do-over of the previously defeated IAC claim is futile.[58]

(29) Under Delaware law, "[s]atisfying the actual innocence test is, by design, a heavy burden, and such meritorious claims are exceedingly rare."[59] A defendant cannot successfully navigate the "actual innocence" standard with evidence that is "merely cumulative or impeaching."[60]

---

[56] *See*, *e.g.*, *Dixon v. State*, 2021 WL 3404223, at *3-5 (Del. Aug. 4, 2021) (affirming dismissal of postconviction relief where defendant's claims of new evidence, *e.g.*, that the prosecution's ballistics expert pleaded guilty to providing false activity sheets to the police and was paid for work not performed, did not give rise to any inference of actual innocence warranting new trial).

[57] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) ("If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable.'"): *Burns v. State*, 76 A.3d 780, 788 (Del. 2013) ("It should be noted that even evidence of '[i]solated poor strategy, inexperience, or bad tactics do[es] not necessarily amount to ineffective assistance of counsel.'").

[58] *E.g.*, *Swan v. State*, 248 A.3d 839, 876-77 (Del. 2021).

[59] *Purnell*, 254 A.3d at 1100.

[60] *Id.*

(30)   The DNA test results here are inconclusive and illustrative of what was already established at trial.  "[I]n combination with effective cross-examination," the best Mr. Madison could hope to do with the inconclusive results would be to impeach conflicting or inconsistent victim testimony.[61]   But it is difficult to divine any different outcome given the victims' actual trial testimony related to the sexual assaults and its impeachment by well-experienced counsel.   Cross-examination based on the inconclusive test results offers little more here.

(31)   As *Purnell* forbids the use of "merely cumulative or impeaching" evidence to satisfy the actual-innocence standard, the inconclusive 2017 DNA test results and their minimal further impeachment value will not suffice.   Thus, Mr. Madison hasn't carried his heavy burden under Rule 61(d)(2)(i) or (i)(5).[62]

## CONCLUSION

(32)   Mr. Madison's motion is an untimely and successive postconviction petition resolved by application of Rule 61's procedural bars.   While he posits otherwise, the 2017 DNA testing results are not new evidence of actual factual innocence *per se*.   Nor do they provide some avenue to revisit Mr. Madison's enduring claim that his trial counsel was ineffective.   Accordingly, his Amended Second Motion for Postconviction Relief is **DENIED**.

---

[61]   Postconviction Arg. Tr. at 14-15.

[62]   *Purnell*, 254 A.3d at 1122.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

Original to Prothonotary

cc:    Karin M. Volker, Deputy Attorney General
        Christopher S. Koyste, Esq.